CASTELLÓ ET AL., DEMANDANTES Y APELANTES, *v.* PÉREZ ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en un caso sobre nulidad de escritura de venta judicial y otros extremos.

No. 1130.—Resuelto en julio 21, 1914.

VENTA JUDICIAL DECRETADA POR LA CORTE FEDERAL—NULIDAD DEL TÍTULO OTORGADO POR EL SPECIAL MASTER.—JURISDICCIÓN DE LAS CORTES DE DISTRITO.—

Una corte de distrito insular tiene jurisdicción para conocer de un pleito de nulidad de escritura de venta judicial otorgada por un *special master* en procedimientos habidos ante la Corte Federal de Puerto Rico, cuando de la demanda resulta que no se ataca la sentencia de la Corte Federal, sino el título de venta por haberse otorgado a favor del abogado de la parte demandante infringiendo así los preceptos del artículo 1362 del Código Civil, y cuando según la demanda la acción en la Corte Federal ha quedado terminada desde hace varios años y la finca está fuera del poder de la Corte Federal y no aparece que la nulidad de dicho título fuera planteada ante la Corte Federal, ni resuelta por ella, ni que se haya confirmado la venta por dicha corte.

JURISDICCIÓN—CORTES DE RÉCORD—PRESUNCIÓN.—La jurisdicción de una corte de récord se presume hasta que se demuestre lo contrario.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José Sabater* y *José G. Torres.*

Abogado de los apelados: *Sr. José de Diego.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

La demanda original de este caso fué presentada en la Corte de Distrito de Mayagüez el 3 de septiembre de 1913, y en virtud de excepciones sostenidas contra ella, se presentó una demanda enmendada en la que sustancialmente se alega: que los apelantes Gerardo, Salvador y José Castelló y Camps son los herederos de Agustín Castelló Busquets, muerto en en año 1906; que en pleito seguido en la Corte de Distrito de los Estados Unidos para Puerto Rico por la mercantil A. Ruffer & Sons contra su padre en cobro de una deuda garantizada con hipoteca sobre cierta finca que describen en la demanda, dicha corte ordenó en 9 de enero de 1904 el pago de $10,264.81 y que en defecto de éste se vendiera en pública subasta la finca hipotecada para satisfacer la deuda a A. Ruffer & Sons o a su abogado; que en el remate que tuvo lugar en 4 de septiembre de 1909 por un auxiliar de la corte (*special master*), fué adjudicada la finca rematada por la cantidad de $8,000 al único postor N. B. K. Pettingill, abogado que había sido y era hasta entonces de la mercantil ejecutante, quien la compró para sí y para su propio beneficio, se autorizó en 15 de septiembre de 1909 por el *special mas-*

*ter* ante notario público y por orden de la Corte Federal la
escritura de venta judicial de la finca, y que la inscribió en
el Registro de la Propiedad de Mayagüez. También se alega
que N. B. K. Pettingill y su esposa vendieron luego la finca
al otro demandado Tomás Pérez Sales con hipoteca por parte
del precio, y que cuando esta venta se verificó constaba explí-
citamente y consta en el Registro de la Propiedad de Maya-
güez que el demandado N. B. K. Pettingill era el abogado
de los ejecutantes A. Ruffer & Sons.

Con tales alegaciones interesaron los apelantes que se
declare por la Corte de Distrito de Mayagüez la nulidad de
la escritura de venta otorgada a favor de N. B. K. Pettingill
por haberse verificado en contravención de lo dispuesto en
el artículo 1362 del Código Civil, y que también se declare
la de la escritura por la que adquirió Pérez Sales porque el
vicio de nulidad de la anterior, consistente en habérla adqui-
rido el abogado de los ejecutantes en el pleito en que se ordenó
la venta constaba en el registro de la propiedad; y pidieron
asimismo que se anulasen las inscripciones que de esos docu-
mentos se habían hecho en dicho registro.

El demandado Pettingill formuló excepción previa a la
demanda enmendada alegando que la corte carece de juris-
dicción por razón de la materia; y Pérez Sales la excepcionó
por el motivo de que no aduce hechos determinantes de causa
de acción, y por otros más.

La excepción de falta de jurisdicción fué sostenida por
la corte inferior, y en consecuencia dictó sentencia declarando
sin lugar la demanda, la que ha sido apelada para ante nos-
otros por los demandantes.

La cuestión que esa sentencia y su apelación plantea es
la de si la Corte de Distrito de Mayagüez tiene jurisdicción
para declarar la nulidad de un título de compraventa obtenido
en un remate judicial celebrado en procedimientos habidos
ante la Corte de Distrito de los Estados Unidos para Puerto
Rico, cuando por orden de la corte se ha entregado al com-
prador el título de adquisición.

Por lo que resulta de la demanda enmendada podemos ver que no se ataca la sentencia de la Corte de Distrito de los Estados Unidos para Puerto Rico, que es una Corte Federal, por la que se ordenó el pago y que en su defecto se vendiera en pública subasta la finca hipotecada y que lo que somete a la discusión y resolución es si la adjudicación que se hizo a favor de N. B. K. Pettingill es nula por haber comprado en remate judicial la finca subastada una persona a quien la ley prohibe comprarla. El título de compra se entregó al comprador en 1909 y desde esa fecha la finca pasó a su poder y quedó fuera de la Corte Federal.

La regla sobre la jurisdicción de las cortes de Estado para conocer de pleitos en que se interesa la nulidad de ventas hechas en una Corte Federal, está claramente expresada por la Corte Suprema de los Estados Unidos en el caso de *Buck* v. *Colbath,* 70 U. S., 341, en el cual se dice:

"El principio es que cuando la propiedad ha sido embargada por un oficial de la corte, en virtud de sus procedimientos, se considera que la propiedad está entonces bajo la custodia y dirección de la corte, y que ninguna otra corte tiene el derecho de intervenir con esa posesión, a menos que sea alguna corte que pueda tener una autoridad directa sobre la corte por virtud de cuyos procedimientos se adquirió la posesión primeramente o alguna jurisdicción superior en la materia. Este es el principio que sirvió de fundamento a las decisiones de este tribunal en los casos de *Taylor* v. *Caryl* y *Hogan* v. *Lucas,* en las cuales se sostiene sustancialmente la misma doctrina.

"Un desvío de esta regla conduciría a la mayor confusión y a controversias interminables entre las cortes de jurisdicción concurrente que derivan sus poderes de la misma fuente; pero que mucho más desastrosas serían las consecuencias en el conflicto de jurisdicción entre cortes cuyas facultades se derivan de orígenes completamente distintos que cuando su jurisdicción es concurrente en lo que respecta a las partes y a la materia objeto de la acción.

"Este principio, sin embargo, tiene su limitación, o más bien su verdadera definición ha de tenerse presente. Es solamente mientras la propiedad se halla en la posesión de la corte, ya sea ésta real o aparente, que la corte está obligada a proteger la posesión contra los procedimientos de otra corte. Siempre que el pleito ha terminado o

ha cesado la posesión por parte del funcionario o de la corte, otras cortes se hallan en libertad para intervenir con ella de acuerdo con los derechos de las partes ante las cortes si esos derechos exigen que dichas cortes tomen o nó posesión de la propiedad. El efecto que se ha de dar en tales casos a las resoluciones de la corte que primeramente ha entrado en posesión de la propiedad descansa sobre principios familiares de la ley, pero no surge ninguna contienda con respecto a la mera posesión y ningún conflicto existe sino aquel que pueda ser resuelto sin intervenciones inconvenientes y que desacrediten.

"Es por este motivo que la corte en el caso de *Day* v. *Gallup* resolvió que este tribunal no tenía jurisdicción de aquel caso. La propiedad embargada había sido vendida y el pleito terminado cuando el funcionario que procedió a practicar el embargo o sus subalternos fueron demandados, y resolvimos que tal pleito en la corte de estado comenzado después que los procedimientos de la corte federal habían terminado no promovió cuestión alguna relativa a la jurisdicción de la corte."

Igual principio se halla establecido en el caso de *Wetherell* v. *Eberle,* 123 Ill., 666, en el que después de estudiar el caso de *Sproehnle et al.* v. *Dietrich,* 110 Ill., 202, llega la corte a la conclusión de que si bien en el de Sproehnle se declaró que la corte de estado no tenía jurisdicción para conocer de una demanda sobre una venta judicial verificada en una Corte Federal fué porque, si bien se había hecho la adjudicación y entregado el certificado de venta por el márshal al postor en la subasta, sin embargo, el procedimiento, no estaba terminado porque pudiendo ser redimida la finca, el márshal no había entregado al comprador la escritura de venta. En el caso de Wetherell en el que la demandante trataba de corregir cierto defecto que había en su título porque habiendo ella adquirido de su padre fué vendida la propiedad en la Corte Federal como perteneciente a su esposo y se entregó el título al comprador, lo cual constituye el supuesto defecto en el título, se declaró que la corte de Estado tenía jurisdicción para conocer de esa demanda porque no solamente la Corte de los Estados Unidos sino también todos sus funcio-

narios habían cesado de tener algún poder, dirección o juris-
dicción sobre el caso, y que por tanto no había fundamento
para temer que pudieran surgir complicaciones de jurisdic-
ción entre la corte del estado y la de los Estados Unidos, ni
el pleito tenía por objeto revisar o intervenir con el fallo o
los procedimientos de la Corte Federal, ni tampoco había cues-
tión respecto a la validez o regularidad de la venta verificada
en la ejecución.

En el presente caso tampoco se discuten los procedimien-
tos de la Corte Federal ni de sus oficiales ya que la cuestión
fundamental propuesta es que la compra hecha por N. B. K.
Pettingill es nula porque no tenía capacidad para comprar
la finca rematada por prohibición expresa de la ley; y aun
cuando en la demanda se alega que el auxiliar (*special mas-
ter*) le otorgó escritura pública de la compra por orden de la
Corte Federal, no hay alegación alguna de que la nulidad de
la venta por incapacidad del comprador fuera propuesta a
la corte y por ella resuelta, para que pueda considerarse como
cosa juzgada entre las partes, ni parece de las alegaciones
de la demanda enmendada que hubo una verdadera confir-
mación de la venta pudiendo esas palabras referirse a la orden
original nombrando el *special master* para vender. Si hubo
una confirmación, hubiera sido fácil decirlo y la falta de expo-
nerla debe considerarse como que no existe para el que alega.
De todos modos hasta que se vea claramente que la corte infe-
rior carece de jurisdicción por razón de la materia debe sos-
tenerse su jurisdicción ya que ésta se presume en una corte
de récord, hasta que se demuestre lo contrario.

En vista de estas consideraciones no podemos sostener que
la Corte de Distrito de Mayagüez carezca de jurisdicción
para conocer de este pleito.

Como los otros motivos de excepción no fueron considera-
dos por la corte inferior ni tratados por las partes en sus
alegatos en la apelación, preferimos que sean considerados
y resueltos por la corte *a quo*.

La sentencia apelada debe ser revocada para que continúen los procedimientos de acuerdo con esta opinión.

*Revocada la sentencia apelada y que continúen*
*los procedimientos de acuerdo con la opinión.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.

El Juez Asociado Sr. Hutchison no tomó parte en la resolución de este caso.