EL PUEBLO DE PUERTO RICO, *Ex Rel.* NEMESIO LÓPEZ, peticionario, *v.* LUIS PÉREZ PEÑA, querellado y apelante.

Núm. 7678.—*Sometido:* Febrero 21, 1939. *Resuelto:* Mayo 16, 1939.

*Antonio Reyes Delgado,* abogado del apelante; *M. Orsini Martínez,* abogado del peticionario; *Hon. Procurador General B. Fernández García,* abogado de El Pueblo de Puerto Rico.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Previo permiso de la Corte de Distrito de San Juan, el 3 de noviembre de 1937 el Procurador General a instancias de Nemesio López presentó en dicho tribunal a nombre de El Pueblo de Puerto Rico, una información de la naturaleza del *quo warranto* contra Luis Pérez Peña. Se alega en la información que el *relator* o querellante es mayor de edad, vecino de San Juan, ciudadano de los Estados Unidos, contribuyente de la Capital de Puerto Rico y se halla en el pleno goce y uso de su capacidad civil y política, y que el demandado Luis Pérez Peña ocupaba en dicha fecha el cargo de Comisionado de la Capital, para el cual fué electo en las elecciones generales de 1936. Que el referido Luis Pérez Peña ocupaba dicho cargo ilegalmente por las siguientes razones:

"(a) Porque está sufriendo interdicción civil por haber sido convicto de un delito *felony* y cumplió la sentencia sin que haya sido indultado por autoridad competente alguna.

"(b) Porque fué excluído de las listas electorales de la Isla de Puerto Rico y no fué elector capacitado, ni del Municipio de San Juan ni de ningún otro municipio o precinto electoral de Puerto Rico.

"(c) Porque el peticionario carece de todo recurso claro, eficaz y expedito en ley para poder privar a dicho Luis Pérez Peña del cargo de miembro de la Junta de Comisionados de San Juan, que ilegalmente viene desempeñando, y sólo tiene el presente recurso de *quo warranto* que ahora ejercita."

Termina la información suplicando que se expida un auto de citación de *quo warranto* requiriendo al demandado para que comparezca en el salón de sesiones de dicho tribunal el día y hora que se señalare, "para que se allane a lo solicitado por vuestro peticionario, o de lo contrario justifique que en virtud de autoridad competente está desempeñando el cargo de miembro de la Junta de Comisionados de San Juan y ejercitando los deberes de dicho cargo de acuerdo con la ley y con plena capacidad política y jurídica para ello, y en definitiva esta Hon. Corte dicte sentencia declarando que Luis Pérez Peña ocupa ilegalmente el cargo de miembro de la Junta de Comisionados de San Juan y que se declare, además, que usurpa ilegalmente las funciones del mismo y que sea desposeído inmediatamente de dicho cargo, y que se abstenga de intervenir en las funciones del mismo y en el ejercicio de los deberes inherentes al mencionado cargo, imponiéndole el pago de las costas, gastos y desembolsos y honorarios de abogado en esta acción."

Se expidió la citación correspondiente y se concedió al demandado hasta el 12 de noviembre de 1937 para contestar los cargos. En dicha fecha radicó un escrito de excepciones previas alegando que la información no aducía hechos constitutivos de causa de acción. Desestimada la excepción previa, se radicó la contestación. Negó el demandado que el *relator* fuera ciudadano americano, que estuviera en el pleno goce y uso de su capacidad civil y política, y negó también su condición de contribuyente del Gobierno de la Capital de Puerto Rico. Aceptó estar en posesión del cargo de Comisionado de la Capital de Puerto Rico y que fué electo en las elecciones generales de noviembre de 1936. Alegó que no está ocupando ilegalmente el mencionado cargo; que no está sufriendo in-

terdicción civil aún cuando hubiere sido convicto de un delito
grave o hubiera extinguido la pena; que es elector capaci-
tado del municipio de San Juan por no haber sido condenado
por delito grave (*felony*) ni por delito electoral. Alegó afir-
mativamente que contra él nunca se ha dictado sentencia vá-
lida alguna, ya sea por delito grave (*felony*) o por delito
electoral que lo incapacite para ser elector; que nunca ha
sido sometido a juicio por delito grave ante un jurado im-
parcial y que no ha tenido un justo juicio de acuerdo con la
Constitución de los Estados Unidos, la Carta Orgánica y las
leyes de Puerto Rico; que cualquier sentencia que exista con-
tra el demandado es nula, inexistente y sin ningún valor, por
no haberse observado los trámites legales. Finalmente alegó
el demandado que el *relator* no tiene interés en este asunto
y termina con súplica de que se desestime la información y
se condene al *relator* en costas, gastos y honorarios de abo-
gado. El 10 de diciembre de 1937 se celebró el juicio oral
con asistencia de todas las partes y el 28 del mismo mes, por
los fundamentos que expresó en la opinión que emitió al
efecto, la Corte de Distrito de San Juan dictó la siguiente
sentencia:

"Por los fundamentos expuestos en la relación de hechos y opinión,
archivada en los autos y que se hace formar parte de esta sentencia,
se falla este asunto declarando con lugar la petición, y se resuelve
que Luis Pérez Peña está ocupando ilegalmente el cargo de miembro
de la Junta de Comisionados de San Juan y usurpando las funciones
del mismo en el Gobierno de la Capital de Puerto Rico, y en su con-
secuencia se ordena y decreta se le destituya de dicho cargo, debiendo
cesar inmediatamente en el desempeño de sus funciones y abandonar
el mismo. El Secretario notificará esta sentencia a la Junta de Co-
misionados de San Juan, por su Presidente, y al Procurador General
de Puerto Rico para que tengan a dicho Luis Pérez Peña por desti-
tuído del cargo que ejerce; y el márshal de esta Corte notificará per-
sonalmente esta sentencia al querellado Luis Pérez Peña, apercibién-
dole de que de no cesar inmediatamente en el ejercicio del cargo de
miembro de la Junta de Comisionados de San Juan, podrá ser lan-
zado del mismo. Se imponen las costas al querellado, en las que se

incluye la suma de cien dólares ($100) como honorarios de abogado de la parte actora.''

No 'estando conforme el demandado con la sentencia precedentemente transcrita, interpuso recurso de apelación para ante este tribunal, imputando a la corte sentenciadora la comisión de los siguientes errores:

''*Primero:* La Corte de Distrito de San Juan cometió error al declarar sin lugar la excepción previa de falta de hechos, en la querella, constitutuvos de causa legal para motivar la destitución del querellado apelante.

''*Segundo:* La Corte de Distrito de San Juan cometió grave error al darle valor probatorio para demostrar que Luis Pérez Peña, el querellado apelante, fué convicto de un delito de incendio malicioso (*felony*) por la Corte de Distrito de Arecibo, a la certificación de sentencia que introdujo como prueba la parte querellante; y cometió más grave error aún la corte sentenciadora al resolver que dicha sentencia introducida en evidencia no puede ser atacada colateralmente en el procedimiento objeto de este recurso.

''*Tercero:* La corte sentenciadora cometió error al declarar que la Ley núm. 32 de 1933, enmendatoria de la ley creando el Gobierno de la Capital, no puede considerarse como enmendatoria de las disposiciones del artículo 183 del Código Político de Puerto Rico; y cometió error asimismo al declarar que una ley especial no puede tener el alcance de enmendar las disposiciones contenidas en una ley de carácter general anteriormente aprobada.

''*Cuarto:* La corte inferior cometió error al resolver que la Ley núm. 10, aprobada por la Legislatura en el año 1937 enmendando el artículo 50 de la Ley núm. 99 que crea el Gobierno Especial para la Capital, no curó el defecto o limitación que tuviera el querellado apelante Luis Pérez Peña, al ser electo en el año 1936 para el cargo del cual se le trata de destituir; y de igual manera cometió error la Corte de Distrito de San Juan al dictar sentencia en contra del querellado apelante ignorando el hecho de que las limitaciones o impedimentos que tuviera el querellado apelante antes de su nominación y elección, fueron subsanados al ser electo para dicho cargo del cual se le trata de destituir.

''*Quinto:* La Corte de Distrito de San Juan cometió grave error al declarar con lugar la solicitud de *quo warranto* en este caso, habiéndose demostrado que Pérez Peña, el querellado apelante, es un elector del municipio de San Juan y que votó en las elecciones de

1936, especialmente cuando antes de incoarse el recurso de *quo warranto* no se destruyó su condición de elector siguiendo los trámites que para tales impugnaciones fija la Ley Electoral vigente en Puerto Rico.

"*Sexto:* Finalmente, alegamos que la corte sentenciadora cometió error al declarar con lugar la solicitud de *quo warranto,* y que su fallo es contrario al derecho y a las pruebas."

El apelado radicó una moción solicitando la desestimación del recurso por frívolo y, oídas las partes, la cuestión quedó definitivamente sometida a nuestra consideración el 21 de febrero último.

Señala el apelante como primer error el haber desestimado la corte inferior la excepción previa que impugna la suficiencia de la información.

Se alega en la información que el apelante ilegalmente ocupa el cargo de Comisionado de la Capital de Puerto Rico, por haber sido convicto y cumplido sentencia por un delito *felony,* cual es el de incendio malicioso, sin que hubiere sido indultado.

A este respecto el artículo 183 del Código Político dispone:

"Art. 183. Ninguna persona podrá ser elegida para cargo alguno insular o *local, si no poseyere las condiciones exigidas para ser elector.*"

Las condiciones a que se refiere el precepto anteriormente transcrito las encontramos en la sección 6 de la Ley número 79 de 25 de junio de 1919 (Leyes de ese año, pág. 531), que literalmente dice así:

"Sección 6.—No podrán inscribirse, y, si estuvieren inscritos votar, (*a*) los declarados incapacitados judicialmente; (*b*) los condenados por delito electoral o delito grave (*felony*) salvo que hubieren sido indultados; (*c*) los que vivan de la caridad pública o estuvieren asilados en instituciones de beneficencia pública; (*d*) los que dejen de votar en cualquier elección general celebrada después de la aprobación de esta Ley; pero este impedimento existirá solamente para las dos elecciones generales subsiguientes, y dejará de existir si, el elector demostrare que tuvo justa causa para no votar de acuerdo con lo que más adelante se dispone."

Parece evidente que siendo indispensable para ser elegible para un cargo público poseer las condiciones exigidas para ser elector, y disponiendo la ley que no pueden ser electores los condenados por delito electoral o delito grave (*felony*), salvo que hubieren sido indultados, al alegarse en la información que el demandado no poseía los requisitos para ser elector por haber sido condenado por un delito de incendio malicioso, que es un *felony*, se exponen hechos demostrativos de que el demandante ocupa ilegalmente el cargo para el cual fué electo, procediendo por consiguiente su destitución.

■ Arguye el apelante, sin embargo, que la frase "los condenados por delito electoral o delito grave (*felony*)", que aparece en la sección 6 anteriormente mencionada, se refiere a los "condenados" (*convicts*) que estuvieren extinguiendo condena al celebrarse la elección y no a aquéllos que como el apelante se hallaban en libertad en dicha ocasión. A esta conclusión llega el apelante, comparando la frase "persona que hubiere sido condenada", que aparece en la sección 6 de la ley de 8 de marzo de 1906, con la de "los condenados" que aparece en la vigente ley antes transcrita. Para nosotros no existe diferencia entre una y otra frase, excepto que "los condenados" es una frase más breve que la anterior, sin variar en absoluto el significado de aquélla. Si interpretásemos esa frase como pretende el apelante, no sólo menospreciaríamos la letra clara e inequívoca de la ley, si que también tal interpretación conduciría al absurdo.

¿De dónde infiere el apelante que la frase "los condenados" está limitada exclusivamente a aquellos reos que están cumpliendo condena? Si la privación del sufragio estuviere limitada a los que extinguen condena por *felony* o delito electoral en la fecha de la elección, ¿para qué establecer la excepción a favor de los condenados "que hubieren sido indultados", si tan libres se hallan los que hubieren sido puestos en libertad por extinción de la pena como los que lo hubieren sido a virtud de un indulto? Además, ¿a qué limitar la pri-

vación a los que estuvieren cumpliendo condena por *felony* o delito electoral, si ninguna persona que se encontrare en prisión el día de las elecciones tiene derecho a salir para ejercitar el derecho de votar aunque su condena sea por infracción a una simple ordenanza municipal?

La incapacidad del demandado para ser elector y, consiguientemente, para ser elegido para el cargo en controversia, es manifiesta, sin que su incapacidad haya sido removida por el hecho de que ilegalmente votara en las elecciones de 1936, pues sabido es que un acto fraudulento o ilegal no es generador de derechos.

Alega el apelante que aún aceptando que no fuera un elector capacitado del municipio de San Juan, su elección para el cargo de miembro de la Junta de Comisionados del Gobierno de la Capital es válida porque la ley especial que rige el Gobierno de la Capital de Puerto Rico en ninguna de sus secciones fija los requisitos que deben reunirse para ser elegible para dicho cargo. No se olvida el apelante, sin embargo, de las terminantes disposiciones del artículo 183 del Código Político, supra, pero trata de evadirlas alegando que dicho Código es una ley de carácter general y que la núm. 99 de 1931 (Leyes de ese año, pág. 627) es de carácter especial, y que habiendo conflicto entre una y otra, la ley especial prevalece sobre la general.

Pero es que no existe conflicto entre una y otra ley. Precisamente por guardar silencio la ley especial es que se aplica la ley general. Si la ley especial requiriese condiciones distintas e incompatibles con las que exige el Código Político, o si expresara, asumiendo un absurdo, que ningún requisito era exigido para ser Comisionado de la Capital, en ese caso existiría un conflicto entre una y otra ley, prevaleciendo desde luego la especial sobre la general.

Tratando de demostrar que el artículo 183 del Código Político no es aplicable a los funcionarios del Gobierno de la Capital invoca el apelante el artículo 1 de la citada Ley núm.

99 de 1931 (pág. 627), según fué enmendado por la Ley núm. 32 de 1933 (Leyes de ese año, pág. 255), que literalmente dice así:

"Artículo 1.—El municipio de San Juan, Puerto Rico, tal como se encuentra constituído por la legislación vigente, queda por la presente abolido. En lugar de dicho municipio, por la presente se crea una corporación política y jurídica de gobierno local que constituirá un distrito especial, con los mismos límites territoriales que pertenecen actualmente al Gobierno de la Capital, cuyos organismos y funcionarios no tendrán otras facultades, restricciones, incompatibilidades, ni impedimentos que los dispuestos en esta Ley, ni en la Ley Orgánica."

Las palabras *"facultades, restricciones, incompatibilidades ni impedimentos"* naturalmente se refieren a la jurisdicción o facultades de los funcionarios y no a su capacidad para ser elegibles. Quiso el legislador establecer una ley especial para la Capital de Puerto Rico, distinta de la que existía para los demás municipios de la Isla y por eso tuvo el cuidado de evitar que por aplicación de preceptos análogos de la ley municipal vigente en los demás municipios se restringiesen, impidiesen u obstaculizasen en alguna forma los deberes y facultades impuestos o conferidos por dicha ley. No se concibe que fuera la intención del legislador no exigir condiciones de idoneidad y moralidad para aquéllos que han de tener en sus manos las riendas del gobierno de la primera y más rica ciudad de la Isla, y en cambio las exija a los miembros de la asamblea municipal del último de los municipios. Si adoptásemos esa interpretación, podría darse el caso insólito de que un menor de edad, un extranjero, y lo que es peor, los convictos de los crímenes más infamantes, serían elegibles para miembros de la Junta de Comisionados de la Capital, y en cambio no lo serían para la asamblea municipal de cualquier municipio sea cual fuere su importancia. La mera exposición de tan rara teoría es su mejor refutación y procede descartarla. *Armstrong Paint & Varnish Works* v. *Nu-Enamel Corporation,* 83 U. S. (L. ed.) 183, 305 U. S. 315.

■ Por último debemos considerar, en relación con la excepción previa, la falta de interés o capacidad legal del *relator* para instituir este procedimiento. Es verdad que esta cuestión no ha sido discutida en el alegato del apelante, pero la levantó en sus alegaciones y la discutió en la corte inferior, y como de existir tal incapacidad, afectaría la suficiencia de la información, es nuestro deber discutirla.

El artículo 2 de la Ley estableciendo el procedimiento de *quo warranto,* que, es el artículo 641 del Código de Enjuiciamiento Civil (ed. 1933), según quedó enmendado por la Ley núm. 47 de 7 de agosto de 1935 (Sesión extraordinaria, pág. 531), en lo pertinente dice así:

"Cuando alguna persona usurpare o ilegalmente ejerciere o desempeñare funciones de algún cargo público . . . o cuando cualquier funcionario público haya cometido o permitido alguna acción que de acuerdo con las disposiciones de la ley envuelva la pérdida de su cargo; . . . el Fiscal General o cualquier fiscal de la respectiva Corte de Distrito, *ya obrando por su propia iniciativa, ya a instancias de otra persona,* podrá radicar ante cualquier Corte de Distrito de Puerto Rico una solicitud para que se instruya información de la naturaleza del *quo warranto* a nombre de El Pueblo de Puerto Rico; . . . . " (Bastardillas nuestras.)

Muy parecido a nuestro estatuto es el artículo 803 del Código de Enjuiciamiento Civil de California, que en lo pertinente dice así:

"Artículo 803.—El Procurador General puede instituir una acción a nombre de El Pueblo de este estado, de su propia iniciativa o a instancias de una persona particular, contra cualquier persona que usurpare o ilegalmente ocupare o ejerciere cualquier cargo público, civil o militar, o cualquier franquicia dentro de este estado . . . "

El Estado, a nombre del cual se instituye este procedimiento, es la única parte demandante en el mismo. Como el procurador general puede actuar de su propia iniciativa, el carácter del *relator,* cuando éste no reclama el derecho a ocupar un cargo público desempeñado por otra persona, es similar al de un testigo de cargo en un procedimiento cri-

minal. Por consiguiente, no es necesario que tenga interés especial alguno en el cargo en cuestión. Así lo ha resuelto el Tribunal Supremo de California repetidamente, entre otros en los casos de *The People of the State of California, ex rel. John M. Cage, relator,* v. *Petroleum Rectifying Co.,* 21 Cal. App. (2d) 289; *People* v. *Reclamation District No. 108,* 169 Cal. 786, 147 P. 1176; *People* v. *Sutter Street Railway Co.,* 117 Cal. 604, 612, 49 P. 736; *People* v. *Milk Producers Ass'n,* 60 Cal. App. 439, 442, y finalmente el de *People* v. *California Protective Corporation,* (1926) 76 Cal. App. 354, 361, de cuya opinión tomamos el siguiente párrafo:

"En apoyo de su contención de que el apelado no tiene capacidad legal para demandar, arguye el apelante que el *relator,* la Asociación de Abogados de Los Angeles, no es una corporación y por consiguiente carece de capacidad para demandar a nombre de la Asociación. Esta contención revela un inexplicable desconocimiento de la naturaleza de este procedimiento y de la relación que con el mismo tiene El Pueblo como demandante. El mal que se ataca es de naturaleza pública y no de interés particular. La única relación del Colegio de Abogados se indica al principio de la demanda, que dice: 'El Pueblo, por su Procurador General, por información y querella de Los Angeles Bar Association, se querella del demandado y alega como causa de acción . . .' La adición del nombre del Colegio de Abogados no convierte este procedimiento en una acción de carácter particular. Es innegable que el brazo de la ley se movió a virtud de la información que el Colegio de Abogados suministró al Procurador General, pero eso no convirtió al Colegio en demandante en esta acción."

Conviene distinguir el caso de autos del de *El Pueblo ex rel. Zayas* v. *Santiago,* 38 D.P.R. 699, 702, en que este tribunal, siguiendo el de *Santiago* v. *Feuille,* 10 D.P.R. 432, dijo:

"Como aquí está envuelto el derecho a cargos públicos, la verdadera parte interesada es el *relator* . . ."

Tanto en el caso de *El Pueblo ex rel. Zayas* v. *Santiago,* como en el de *Santiago* v. *Feuille, ubi supra,* el *relator* reclamaba para sí un cargo para el cual alegaba haber sido legalmente electo y que lo usurpaba otra persona. En tales cir-

cunstancias su interés en el resultado del procedimiento es manifiesto. En el presente caso el *relator* no reclama para sí el cargo. Su interés en el asunto fué sencillamente el que tiene todo ciudadano de que los funcionarios que han de regir los destinos de la ciudad en que reside sean electos de acuerdo con la ley. Por eso se dijo en el caso de *Santiago* v. *Feuille*:

"En los casos de *quo warranto, cuando el procedimiento tiene por objeto la reclamación de un cargo o empleo,* el promovente (*relator*) es la verdadera parte interesada, pero cuando el pleito versa sobre usurpación de una franquicia por alguna corporación, el Pueblo de de Puerto Rico es la única parte interesada y debe ser representada por el *Attorney General* o alguno de los fiscales de distrito." (Bastardillas nuestras.)

El interés del *relator* en el caso de autos es similar al del *relator* en un pleito que versa sobre usurpación de franquicia por una corporación.

En su esfuerzo por demostrar que el demandado ocupa legalmente el cargo, alega el apelante que su elección fué convalidada y ratificada y que todos sus impedimentos fueron removidos por la Ley núm. 10, de 24 de marzo de 1937 (Leyes de 1936-37, pág. 138), enmendatoria del artículo 50 de la citada ley núm. 99, supra, que en lo pertinente dice así:

"*Disponiéndose,* que los cinco miembros de la Junta de Comisionados electos en las elecciones generales de 1936, continuarán en el desempeño de sus funciones hasta el fin de sus términos de elección, y dicha Junta de Comisionados será aumentada en la forma indicada tan pronto comience a regir la presente Ley."

Tendría razón el apelante si la Asamblea Legislativa en alguna forma hubiera consignado expresamente su intención de remover la incapacidad de que pudieran adolecer todos o cualquiera de los Comisionados, o si, con conocimiento de tal incapacidad, manifestase su voluntad de que continuasen en sus puestos. Pero de la ley no surge la intención del legislador de ratificar o convalidar la ilegalidad de la elección del apelante, sino la de prorrogar el término, lo cual no conva-

lida su elección. A los efectos de los requisitos necesarios para que exista ratificación o confirmación, véase el caso de *Central Bocachica, Inc.* v. *Tesorero de P. R.,* ante, pág. 424, que aunque se refiere a la confirmación de los contratos, sus principios son igualmente aplicables a confirmación o ratificación de un acto nulo por medio de estatuto.

A nuestro juicio, procedió correctamente la corte inferior al desestimar la excepción previa. No existe, pues, el primer señalamiento de error.

■■ Consideremos ahora el siguiente.

Consiste el segundo señalamiento de eror en que la corte, para demostrar que el apelante fué convicto de incendio malicioso, dió valor probatorio a una certificación de sentencia admitida en evidencia, que en lo pertinente dice así:

"Corte de Distrito del Distrito Judicial de Arecibo, P. R.— El Pueblo de Puerto Rico contra Luis Pérez Peña, Jorge Pelet y José Colón Marrero.—Número de la Causa 1073.—Delito: Incendio Malicioso.—Sentencia.—Dictada en 10 de marzo de 1921.

"En vista del veredicto del Jurado dictado en contra de dichos acusados, el día 2 del corriente mes de marzo, declarando a dichos Luis Pérez Peña, Jorge Pelet y José Colón Marrero, culpables del delito de Incendio Malicioso, la Corte los declara a su vez convictos como autores de dicho delito, y condena a cada uno de dichos acusados Luis Pérez Peña, Jorge Pelet y José Colón Marrero, a la pena de seis años de prisión, en el presidio Departamental de la Isla, con trabajos forzados y a pagar las costas de esta causa. (Fdo.) Enrique Lloreda, Juez.—(Fdo.) Manuel L. Corbet, Secretario.

"Juan Ramírez Vega, Secretario de la Corte de Distrito del Distrito Judicial de Arecibo, Puerto Rico.—Certifico: Que la que antecede es una copia fiel y exacta de la sentencia dictada por la referida Corte, en la causa criminal arriba expresada, que fué vista ante Jurado el día 2 de marzo de 1921, y cuya sentencia fué confirmada por el Hon. Tribunal Supremo de Puerto Rico, por sentencia dictada con fecha 2 de junio de 1922. Y a petición del abogado Mario Orsini Martínez, expido la presente bajo mi firma y el sello oficial de la corte, en la ciudad de Arecibo, P. R., a diez de noviembre de 1937.—(Fdo.) Juan Ramírez Vega, Sec. Corte de Distrito de Arecibo."

Argumentando este segundo señalamiento de error, sostiene el apelante que la ameritada sentencia es inexistente porque de la misma no aparece que en el acto de dictarla el tribunal, o el secretario bajo la dirección de aquél, informara al acusado de la naturaleza del cargo contra él, de las alegaciones de su defensa, del veredicto del jurado, ni le preguntase si tenía alguna causa legal para demostrar que no procedía pronunciarse sentencia contra él.

Invoca el apelante en su apoyo la jurisprudencia de este Tribunal establecida en los casos de *El Pueblo* v. *Lizardi,* 7 D.P.R. 22, y *El Pueblo* v. *Muñoz,* 9 D.P.R. 537, así como el artículo 318 del Código de Enjuiciamiento Criminal, que dice así:

"Cuando el acusado comparezca para oír la sentencia, debe ser informado por el tribunal, o bajo la dirección de éste por el secretario, de la naturaleza del cargo que se le hace, así como de las alegaciones de su defensa y del veredicto, si hubiere recaído alguno, y debe preguntársele si tiene alguna causa legal para demostrar que no procede dictar sentencia contra él."

Los casos de *El Pueblo* v. *Lizardi,* supra, resuelto el 18 de mayo de 1904, y *El Pueblo* v. *Muñoz,* supra, resuelto en 12 de diciembre de 1905, no sostienen en forma alguna que la sentencia en que no aparezca expresamente que se ha dado cumplimiento al artículo 318 del Código de Enjuiciamiento Criminal es inexistente. Lo que se dijo en el primero de dichos casos por el Juez Asociado Sr. Hernández fué lo siguiente:

"No se ha presentado pliego de excepciones que demuestre que el tribunal sentenciador dejó de cumplir el precepto del artículo 318 del Código de Enjuiciamiento Criminal; pero como en el acta del juicio se consigna que terminadas las pruebas el Fiscal solicitó del Tribunal un veredicto de culpabilidad y el letrado del acusado la absolución de éste, habiendo declarado el Tribunal culpable al acusado del delito de abuso de confianza que le imputaba el Ministerio Fiscal, imponiéndole la pena de 3 años de presidio, sin que se haga la más ligera indicación de que se diera cumplimiento a las prevenciones que contiene el artículo 318 del Código de Enjuiciamiento

Criminal, lógico es presumir que a dicho artículo no se dió aplicación pues si la hubiera tenido se hubiera hecho constar en acta, y los términos en que ésta aparece redactada más bien revelan el incumplimiento del artículo citado privándose con ello al acusado de un medio importante de defensa.''

''Por las razones expuestas somos de opinión que debe revocarse la sentencia apelada que dictó el Tribunal de Distrito de Humacao en 23 de septiembre del año próximo pasado, debiendo dicho Tribunal celebrar un nuevo juicio o dictar cualquier otra resolución que autorice la ley, con las costas del recurso de oficio.''

No es de extrañar que en el año 1904, en el período de transición en que empezaba a aplicarse en esta Isla un nuevo sistema de procedimiento criminal, se incurriera en el error de sostener, tratándose de una corte de récord como lo era la de Humacao en el caso de Lizardi, que el hecho de no constar en el acta del juicio que se hubiese dado cumplimiento al artículo 318 del Código de Enjuiciamiento Criminal creaba la presunción de que en realidad no se había cumplido con dicha disposición legal. Este error ha sido subsanado posteriormente en los casos de *Coll et al.* v. *Rigo,* 16 D.P.R. 319; *Castelló et al.* v. *Pérez et al.,* 21 D.P.R. 203; y *Paniagua* v. *El Pueblo,* 33 D.P.R. 902, donde se ha resuelto que siendo las cortes de distrito cortes de récord, se presume que han actuado con jurisdicción sobre las personas y sobre la materia a menos que claramente aparezca lo contrario.

En California, donde el artículo 1200 del Código Penal es igual al 318 de nuestro Código de Enjuiciamiento Criminal, se ha resuelto que concediendo que el acusado debe ser informado por la corte o bajo su dirección de la naturaleza del cargo que se le hace, de las alegaciones y del veredicto y que tal información no forma parte de la sentencia pronunciada, aunque del récord debe aparecer que tales manifestaciones fueron hechas, si del mismo no aparecieren se presume que fueron hechas, a menos que el acusado demuestre lo contrario. *People* v. *Barton,* 88 Cal. 176, 178, 25 Pac. 1117; *People* v. *Ebanks,* 117 Cal. 652, 665; *People* v. *Mack,* 115 Cal. App. 588, 591.

820

Y sobre el efecto que en la sentencia produce la omisión de tales advertencias, se ha resuelto en California que la omisión de preguntar al acusado si tiene alguna razón legal que impida dictar sentencia en su contra no es suficiente para convertirla en una sentencia absolutamente nula (*absolutely void*) cuando la corte tenía jurisdicción sobre la materia y sobre la persona acusada. *Ex parte Gibson,* 31 Cal. 619, 627, 91 Am. Dec. 546; *In re Bouchard,* 38 Cal. App. 441, 443. Más recientemente, en el año 1934, la misma Corte de California, en el caso de *People* v. *Swift,* 140 Cal. App. 7, 34 P. (2d) 1041, sostuvo que la omisión de tales advertencias por parte de la corte sentenciadora, si bien constituye error, no produce la revocación de la sentencia a menos que el acusado demuestre que sufrió algún perjuicio. Véase también al mismo efecto la monografía sobre la materia que aparece en 113 A.L.R. 821.

Lo expuesto nos lleva a la conclusión de que en el supuesto de que la corte no diera cumplimiento a las disposiciones del artículo 318 del Código de Enjuiciamiento Criminal, tal defecto no hizo la sentencia absolutamente nula o inexistente.

Tampoco existe el segundo de los errores señalados.

Los señalamientos de error tercero y cuarto han sido suficientemente discutidos al considerar el primero. Tampoco existen.

El quinto señalamiento de error sostiene que la corte inferior debió desestimar la solicitud al probar el apelante que es elector y que votó en las elecciones de 1936 en el municipio de San Juan.

Después de conocer las disposiciones del artículo 183 del Código Político antes transcrito, el error señalado por el apelante no merece seria consideración. Lo que exige la ley para que una persona sea elegible para un cargo insular o municipal no es que haya votado legal o ilegalmente en las últimas elecciones, sino que reúna las condiciones exigidas para ser elector. La prueba concluyentemente demuestra que

el peticionario no las posee, pues fué convicto y cumplió condena por un delito *felony* y aunque alega que fué indultado, la prueba demuestra que se le conmutó la pena solamente, lo que no conlleva la restitución de los derechos civiles. El efecto legal de la conmutación de la pena es hacer menos severa la sentencia impuesta y nada más. 39 Harvard Law Review 112 y casos citados. El hecho de que ilegalmente votara el peticionario en las elecciones de 1936 no afecta sus derechos, pues, como dijimos al considerar el primer señalamiento de error, los actos realizados en contravención de la ley no pueden ser fuente de derechos.

Réstanos ahora considerar el sexto y último de los errores señalados por el apelante. Alega que la corte sentenciadora cometió error al declarar con lugar la solicitud de *quo warranto* y que su fallo es contrario al derecho y a las pruebas. Después de la discusión que hemos hecho de los errores anteriores, muy poco tendremos que agregar al considerar éste. Sólo es necesario expresar que de acuerdo con la evidencia resulta concluyentemente probado que el apelante ha sido convicto y cumplió sentencia por un delito de incendio malicioso, que es un *felony,* y que aunque se le conmutó la pena, tal conmutación no conlleva la restitución de los derechos civiles.

*No existe el sexto y último de los errores señalados y en su consecuencia procede declarar con lugar la moción del apelado y desestimar el recurso por frívolo.*