EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen Rivera Rodríguez<br><br>Demandante Peticionaria<br><br>v.<br><br>Esteban Rivera Reyes<br><br>Demandado Recurrido | Certiorari<br><br>2006 TSPR 103<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2004-616

Fecha: 20  de junio de 2006

Tribunal de Apelaciones:

> Región Judicial de Fajardo Panel IX

Jueza Ponente:

> Hon. Andrés Salas Soler

Abogado de la Parte Peticionaria:

> Lcdo. Nector Robles Abraham

Abogado de la Parte Recurrida:

> Lcdo. Máximo Molina Fragosa

Materia: Liquidación de bien ganancial.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen Rivera Rodríguez

    Demandante Peticionaria

                           CC-2004-616

              v.

Esteban Rivera Reyes

    Demandado Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 20 de junio de 2006.

Se nos solicita la revocación de una resolución emitida por el Tribunal de Apelaciones. En virtud de la misma, el foro intermedio apelativo confirmó una resolución dictada por el Tribunal de Primera Instancia. Este último declaró con lugar una solicitud de sentencia sumaria en una acción de ejecución de una sentencia de divorcio, dictada por la causal de consentimiento mutuo. Veamos los hechos que originan el presente recurso.

I

La señora Carmen Rivera Rodríguez, en adelante señora Rivera Rodríguez, y el señor Esteban Rivera

Reyes, en adelante señor Rivera Reyes, contrajeron matrimonio el 24 de junio de 1972, bajo el régimen económico matrimonial de sociedad legal de gananciales. Durante el matrimonio procrearon una hija de nombre Moira Grushesca Rivera Rivera.

El 17 de enero de 1991, la señora Rivera Rodríguez presentó ante el Tribunal de Primera Instancia una demanda de divorcio contra su esposo bajo la causal de trato cruel.[1] El 29 de abril de 1991, los esposos comparecieron ante dicho tribunal mediante moción conjunta en la que manifestaron haberse puesto de acuerdo para enmendar la demanda de divorcio presentada por la causal de trato cruel por una petición de divorcio por consentimiento mutuo. Unieron e hicieron formar parte de dicha moción la "DEMANDA ENMENDADA" a ser considerada por el tribunal.[2] En la misma, los esposos estipularon un inventario de sus bienes gananciales, su distribución y liquidación, las deudas a cargo de la sociedad legal de gananciales y la asunción de las mismas por la señora Rivera Rodríguez. También estipularon que la custodia de la hija matrimonial la tendría la señora Rivera Rodríguez, la patria potestad compartida por ambos, las relaciones paterno filiales entre la menor y su padre, y la cuantía de la pensión alimentaria que éste se obligaba a pagar a su hija, quien en ese entonces tenía once (11) años de edad. El 10 de mayo de 1991, el Tribunal de Primera

---

[1] Autos originales del Tribunal de Apelaciones, caso KLCE0400173, "DEMANDA".

Instancia dictó una sentencia mediante la cual decretó la disolución del vínculo matrimonial por mutuo consentimiento.[3] En la referida sentencia, dicho foro adoptó en su totalidad las estipulaciones de las partes incluidas en la "DEMANDA ENMENDADA" de divorcio por consentimiento mutuo y ordenó la liquidación del régimen económico matrimonial de conformidad.

En torno a los bienes de los ex cónyuges, la sentencia de divorcio, transcribiendo la estipulación de estos al respecto, dispuso lo siguiente:

> **Que durante dicho matrimonio, los peticionarios han adquirido los siguientes bienes:**
>
> A. **Casa** localizada en el barrio Santa María de Ceiba, P.R. que consta de cemento y bloques, de dos pisos.
>
> B. Muebles y enseres del hogar.
>
> C. Auto Mazda 323 año 1988.
>
> D. Toyota corona año 1975
>
> …Que **la casa** que se adquirió en matrimonio **la seguirá viviendo** la demandante, Carmen Rivera Rodríguez, con su hija Moira Grushesca; sin embargo, **la misma se pondrá a la venta y una vez la misma se vendiese; luego de pagar cualquier gasto relacionado con la venta, el producto se dividirá igualmente entre ambas partes.** El bien descrito en la letra B y el descrito en la C se le adjudicará a la demandante, Carmen Rivera Rodríguez y el bien descrito en la letra D al demandado, Esteban Rivera Reyes. Que las deudas serán asumidas por la demandante Carmen Rivera Rodríguez (Énfasis nuestro).[4]

---

[2] Íd., "DEMANDA ENMENDADA".

[3] Apéndice del recurso de *Certiorari*, págs. 18-20.

[4] Íd., págs. 19-20.

De conformidad con la referida sentencia, la señora Rivera Rodríguez continuó residiendo en la casa con la hija menor de edad del disuelto matrimonio. El 25 de junio de 1999, la hija contrajo nupcias y se mudó de la referida residencia. A pesar de ello, la señora Rivera Rodríguez continuó residiendo en la misma.

Así las cosas, el 26 de noviembre de 2002, el señor Rivera Reyes presentó ante el Tribunal de Primera Instancia una moción de ejecución de sentencia, solicitando que se ordenara la venta de **la casa** que constituyó el hogar conyugal.[5] Alegó que la señora Rivera Rodríguez se negaba, obstaculizaba e impedía la venta de la misma, condicionando tal venta a que se liquidara también el **solar** donde la misma enclava, por considerarlo ganancial. Arguyó que la **casa** era un bien inmueble ganancial, a diferencia del **solar** donde la misma enclava. Sostuvo que el solar en cuestión era un bien inmueble privativo suyo, que no tenía que formar parte, ni formó parte, de las estipulaciones del divorcio ni de la sentencia que adoptó las referidas estipulaciones. Fundamentó su alegación sobre el carácter privativo del solar en el hecho de que lo adquirió a título de compraventa antes de contraer matrimonio con la señora Rivera Rodríguez. Por otro lado, sostuvo que una tasación efectuada sobre la propiedad completa demostraba que **la casa**, tenía un valor de

---

[5] Íd., págs. 23-32.

$85,831. En virtud de ello, solicitó al tribunal que decretara que dicha cantidad representaba el valor de la casa, y que de ella, correspondía a cada parte $42,915.50, por concepto de las respectivas participaciones iguales que en común pro indiviso los ex cónyuges tenían sobre la casa. Solicitó que se le impusiera a la señora Rivera Rodríguez el pago de una renta mensual por razón de su disfrute exclusivo de la casa desde la fecha en que la hija matrimonial contrajo nupcias y se mudó de la misma, esto es, desde el 25 de junio de 1999.

Por su parte, la señora Rivera Rodríguez compareció ante el tribunal mediante moción escrita, oponiéndose a la liquidación solicitada.[6] Planteó que como parte del proceso de divorcio, las partes estipularon la venta del **inmueble completo** (la casa y el solar) y la división en partes iguales del producto de la venta. Arguyó que cuando estipularon lo anterior, el señor Rivera Reyes renunció a cualquier derecho de crédito o reclamación que tuviese sobre el solar. Argumentó que si era el interés del señor Rivera Reyes solicitar algún crédito sobre el inmueble, que en ese entonces pertenecía a la sociedad legal de gananciales, debió hacerlo a través de las estipulaciones de las partes dentro del procedimiento de divorcio. Sostuvo que lo estipulado en un procedimiento de divorcio por consentimiento mutuo constituye un contrato de transacción judicial, con autoridad de cosa juzgada, por lo que el señor

Rivera Reyes no podía pretender cambiar la naturaleza de lo acordado como parte de dicho proceso.  Solicitó finalmente la ejecución de la sentencia de divorcio, a tenor con las estipulaciones de las partes.

El 20 de mayo de 2003, el señor Rivera Reyes presentó ante el Tribunal de Primera Instancia una moción de sentencia sumaria.[7]  Acompañó a la misma con copia del informe de tasación de fecha 25 de junio de 2001, rendido por el señor Jorge Isern Piñero, que determina que la **casa** en controversia tenía un valor de $85,831.[8]  También unió a su moción, copia de la escritura de segregación y compraventa del **solar**[9] y copia de una certificación registral literal, que contiene las inscripciones primera y segunda del mencionado solar.[10]  Tanto la escritura como la certificación registral, demuestran que el **solar** fue comprado por el señor Rivera Reyes antes de contraer matrimonio con la señora Rivera Rodríguez.  Así, solicitó que, a tenor con las estipulaciones de los cónyuges contenidas en la "DEMANDA ENMENDADA" de divorcio por consentimiento mutuo, de conformidad con la sentencia de divorcio que las adoptó, y a la luz de la tasación,

---

[6] Íd., págs. 35-36.

[7] Apéndice del recurso de *Certiorari*, págs. 87-125.

[8] Íd., págs. 117-125.

[9] Escritura número 97, otorgada en Fajardo, el 8 de mayo de 1971, ante el notario Guillermo Bird Martínez, Íd., págs. 28-32.

escritura y certificación registral antes relacionadas, se decretara lo siguiente: (1) se reconociera su derecho propietario exclusivo sobre el **solar** en controversia, por ser un bien inmueble privativo aportado por él al matrimonio; (2) se ordenara únicamente la venta de la **casa** por ser de origen ganancial, dividiéndose el producto de la venta en partes iguales entre los ex cónyuges; (3) se le impusiera a la señora Rivera Rodríguez el pago de una renta por razón del disfrute exclusivo que tenía sobre la casa, desde junio de 1999 hasta la fecha en que la desocupara, de conformidad con las normas de derecho que regulan la comunidad de bienes.

Por su parte, la señora Rivera Rodríguez presentó un "Memorando de Derecho y Oposición a Sentencia Sumaria".[11] Planteó que la sentencia de divorcio no dispuso que la casa y el solar fueran bienes separados; tampoco que el solar era privativo del señor Rivera Reyes y que, mucho menos, le concedió a éste un crédito sobre el valor del solar por ser de naturaleza privativa. Sostuvo que tanto en las estipulaciones del divorcio como en la referida sentencia, al inventariarse los bienes de los ex cónyuges, sólo se expresó que "'la casa que se adquirió en matrimonio' 'se pondrá a la venta' y 'el producto se dividirá igualmente entre ambas partes'". Argumentó que cuando las partes hicieron uso de la palabra **"casa"** en sus estipulaciones, se

---

[10] Expedida por el Registro de la Propiedad, Sección de Fajardo, el 4 de mayo de 2000, Íd., págs. 111-116.

referían a la casa y al solar de forma integral. Añadió que la sentencia de divorcio recogió esa intención de las partes al referirse también a **"la casa"** como el bien ganancial a liquidarse. Arguyó que de no haber sido así, el señor Rivera Reyes habría solicitado al tribunal que declarara en la sentencia el carácter privativo del solar, a fin de que se le reconociera el crédito correspondiente, una vez se vendiera la casa y el solar. Reafirmó que al llegar a las estipulaciones contenidas en la "DEMANDA ENMENDADA" de divorcio por consentimiento mutuo, constitutivas de un contrato de transacción judicial, el señor Rivera Reyes renunció al derecho de crédito que tenía sobre el solar.

El 29 de diciembre de 2003, el Tribunal de Primera Instancia dictó una resolución sumariamente, declarando con lugar la moción de ejecución de sentencia que presentó el señor Rivera Reyes.[12] **Determinó lo siguiente**: (1) que el solar era un bien inmueble privativo del señor Rivera Reyes aportado por él al matrimonio; (2) que luego de éste casarse con la señora Rivera Rodríguez, la sociedad legal de gananciales compuesta por ambos construyó la casa que enclava en el solar; (3) que durante el proceso de divorcio, los cónyuges estipularon que la señora Rivera Rodríguez continuaría residiendo en la casa en cuestión en unión a la hija matrimonial, para luego venderla, y distribuir entre ellos el producto de la venta en partes iguales; (4) que no

---

[11] Apéndice del recurso de *Certiorari*, págs. 126-128.

[12] Íd., págs. 129-145.

surge de las estipulaciones contenidas en la "DEMANDA ENMENDADA" de divorcio por consentimiento mutuo, ni de la sentencia de divorcio que las adoptó, que las partes sometieron a la consideración del tribunal como un bien de la sociedad legal de gananciales a liquidarse el solar donde enclava la casa; (5) que el solar no formó parte de la sentencia de divorcio; (6) que la referida sentencia sólo ordenó la venta de la casa y la distribución de su producto en partes iguales entre los ex cónyuges, por lo que únicamente procedía la venta de la casa; (7) que la casa tenía un valor de $85,831, de los cuales correspondía a cada cual $42,915.50; (8) que desde el 25 de junio de 1999, fecha en que la hija matrimonial se casó y se mudó de la casa, la señora Rivera Rodríguez residió sola en la misma, disfrutándola de forma exclusiva; y (9) que ese uso exclusivo de la casa generó renta a favor del señor Rivera Reyes, que procedía ser descontada a la señora Rivera Rodríguez de los $42,915.50 que a esta corresponden por concepto de su venta. Finalmente, señaló una vista para determinar el canon de renta que tenía que satisfacer la señora Rivera Rodríguez al señor Rivera Reyes desde junio de 1999 hasta que desocupara la casa, cantidad que se sumaría a los $42,915.50 que le correspondían al señor Rivera Reyes.

Inconforme, la señora Rivera Reyes acudió ante el Tribunal de Apelaciones mediante recurso de *certiorari*. Evaluadas las posiciones de ambas partes, el foro

intermedio apelativo confirmó la resolución dictada por el

Tribunal de Primera Instancia.[13]

Insatisfecha, la señora Rivera Rodríguez acudió ante nos, mediante recurso de *certiorari*, señalando los errores siguientes:

> PRIMER ERROR: INCIDIO EL TRIBUNAL DE APELACIONES AL INTERVENIR Y ENMENDAR UNA SENTENCIA FINAL, FIRME E INAPELABLE, QUE SE HABIA DICTADO HACE MAS DE DIEZ (10) AÑOS, PARA CAMBIARLA Y DARLE UNA INTERPRETACION DISTINTA Y QUE CLARAMENTE CONSTITUYE COSA JUZGADA.
>
> SEGUNDO ERROR: ERRO EL TRIBUNAL DE APELACIONES AL NO DISPONER QUE EL TRIBUNAL DE INSTANCIA, SALA SUPERIOR DE FAJARDO, SE HABIA EQUIVOCADO AL DECLARAR CON LUGAR UNA MOCION DE SENTENCIA SUMARIA, CUANDO DEL MISMO CASO SE DESPRENDE QUE PUEDE HABER CONTROVERSIA SOBRE LA INTENCIÓN DE LAS PARTES AL CONTRATAR.
>
> TERCER ERROR: ERRO EL TRIBUNAL DE APELACIONES AL NO DETERMINAR QUE EN LA SENTENCIA CUANDO SE REFIERE AL TERMINO "CASA" DEBE ENTENDERSE "CASA Y SOLAR", YA QUE ESA FUE LA INTENCIÓN DE LAS PARTES.
>
> CUARTO ERROR: INCIDIO EL TRIBUNAL DE APELACIONES AL NO DETERMINAR QUE EL RECURRIDO, AL NO ESTIPULAR O REQUERIR QUE SE INCLUYERA EN LA SENTENCIA DE DIVORCIO, QUE EL TENIA UN CREDITO A SU FAVOR-PORQUE EL SOLAR ERA PRIVATIVO SUYO-ESTE RENUNCIO AL MISMO.

---

[13] Íd., págs. 63-81. Cabe señalar que el Tribunal de Apelaciones modificó la parte de la resolución que dispuso que la allí peticionaria tenía que pagarle al señor Rivera Reyes renta sobre la casa desde junio de 1999. Dispuso, en cambio, que sólo procedía la imposición del pago de renta desde noviembre de 2002, fecha en que el señor Rivera Reyes presentó su moción de ejecución de sentencia ante el foro primario. Por no formar parte de los señalamientos de error del recurso ante nos, no nos expresaremos sobre el particular.

<u>QUINTO ERROR</u>: EN LA ALTERNATIVA ERRO EL TRIBUNAL DE APELACIONES AL NO APLICARLE A ESTE CASO LA DOCTRINA DE ACCESIÓN A LA INVERSA, CUANDO COMO EN ESTE CASO, LA SOCIEDAD DE GANANCIALES CONSTRUYE UNA EDIFICACIÓN (CASA) EN SUELO PROPIO DE UNO DE LOS CONYUGUES, A EXPENSAS DE DICHA SOCIEDAD DE GANANCIALES.

Atendido el recurso de *certiorari* presentado por la señora Carmen Rivera Rodríguez, concedimos a la parte aquí recurrida un término de veinte (20) días para presentar su alegato. No compareció.

Sin el beneficio de su comparecencia nos encontramos en posición de resolver.

A

En primer lugar, nos corresponde determinar, si como plantea la peticionaria, el Tribunal de Apelaciones contravino la doctrina de cosa juzgada, "al intervenir y enmendar" la sentencia final y firme que decretó el divorcio de las partes en el año 1991. Veamos.

En <u>Figueroa Ferrer v. E.L.A.</u>,[14] reconocimos el consentimiento mutuo como causal legítima de divorcio. Pautamos que la acción de divorcio bajo tal causal habría de ser tramitada mediante una petición conjunta de los cónyuges. El Tribunal señaló lo siguiente:

> … no se aceptará petición alguna de divorcio bajo los principios enunciados sin que las partes adjunten las estipulaciones correspondientes **sobre la división de sus bienes**, el sustento de las partes y otras consecuencias del divorcio (Énfasis nuestro).[15]

---

[14] 107 D.P.R. 250 (1978).

[15] Íd., pág. 277.

Las estipulaciones suscritas por las partes contenidas en una petición de divorcio por la causal de consentimiento mutuo, constituyen un contrato de transacción judicial que las obliga.[16]  De ordinario, los jueces aceptarán los convenios y estipulaciones a que lleguen los cónyuges para ponerle fin a la acción.  Tales estipulaciones tienen efecto de cosa juzgada entre las partes.[17]  Por otro lado, la defensa de cosa juzgada fue incorporada en nuestra jurisdicción mediante el Art. 1204 del Código Civil, que dispone lo siguiente:

> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. [18]

Dicha doctrina impide que se litigue en un pleito una reclamación que pudo haberse litigado y adjudicado en un pleito anterior entre las mismas partes, y sobre la misma causa de acción.[19]  No obstante, en Sucn. Román v. Shelga

---

[16] Igaravidez v. Ricci, 147 D.P.R. 1, 5 (1998); Magee v. Alberro, 126 D.P.R. 228 (1990); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 74 (1987).

[17] Igaravidez v. Ricci, supra; Negrón Rivera y Bonilla, Ex parte, supra, pág. 76.

[18] 31 L.P.R.A. sec. 3343.

[19] Mercado Riera v. Mercado Riera, 100 D.P.R. 940 (1972); Isaac Sánchez v. Universal C.I.T. Credit, 95 D.P.R. 372, 382 (1967); Riera v. Pizá, 85 D.P.R. 268, 274 (1962); Capó Sánchez v. Srio. de Hacienda, 92 D.P.R. 837 (1965).

Corp.,[20] expresamos que a pesar de que el contrato de transacción tiene el efecto de cosa juzgada, esto no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en que se levanta como defensa.

En su alegato, la señora Rivera Rodríguez sostiene que, **aún en el supuesto de que el solar en controversia fuera un bien privativo** del señor Rivera Reyes, y que por esa razón se omitiera su mención en las estipulaciones del divorcio, el Tribunal de Primera Instancia no tenía autoridad para intervenir con la sentencia de divorcio que las adoptó. Aduce que la ausencia de jurisdicción del foro primario obedecía a que la referida sentencia adquirió efecto de cosa juzgada, una vez advino final y firme.[21] Argumenta, además, sin citar autoridad jurídica alguna que la apoye, que **en tal supuesto**, el señor Rivera Reyes venía obligado a "salvaguardar clara e inequívocamente" el carácter privativo del solar, antes de firmar las estipulaciones del divorcio. Añade que el alegado carácter privativo del solar es un asunto que el recurrido pudo haber litigado durante la acción de divorcio. Puntualiza que al no hacer reserva del carácter privativo del solar y/o al no litigar dicho carácter en aquel entonces, perdió la oportunidad de hacerlo, pues la doctrina de cosa juzgada le impide hacerlo ahora. No le asiste la razón.

---

[20] 111 D.P.R. 782, 787 (1981).

[21] "ALEGATO PARTE DEMANDANTE-RECURRENTE" [sic], págs. 6-8.

**Si partiéramos del mismo supuesto aducido por la peticionaria** (que el solar fuera un bien privativo de su ex esposo), el señor Rivera Reyes no venía obligado a hacer reserva del solar en las estipulaciones del divorcio. Cuando en Figueroa Ferrer v. E.L.A., *supra*, resolvimos que en casos de divorcio por la causal de consentimiento mutuo no se aceptará petición alguna de divorcio "sin que las partes adjunten las estipulaciones correspondientes sobre la división de sus bienes…", nos referimos a bienes de naturaleza ganancial. El propósito de ello fue tratar de garantizar que, a partir del decreto de divorcio, no surgiesen controversias entre los ex cónyuges en relación a tales bienes gananciales. Allí nada expresamos en relación a los bienes privativos de éstos.

En consecuencia, resolvemos que, durante un proceso de divorcio bajo la causal de consentimiento mutuo, los bienes que necesariamente tienen que ser objeto de avalúo, inventario, liquidación y adjudicación son aquellos adquiridos con fondos de la sociedad legal de gananciales. Un cónyuge que aporta a un matrimonio contraído bajo dicha sociedad, bienes de naturaleza privativa, o que adquiere bienes de tal naturaleza luego de contraer matrimonio, **no viene obligado** a hacer reserva de los mismos ni a estipular asuntos relacionados a estos durante el procedimiento de divorcio bajo la mencionada causal. Por la misma razón, tampoco viene obligado a litigar y obtener sentencia que declare el carácter privativo de dichos bienes, previo al

decreto de divorcio. Bajo el ordenamiento jurídico vigente, un juez no tiene que disponer de los bienes privativos de los ex cónyuges en una sentencia de divorcio por la causal de consentimiento mutuo. La sentencia que se dicte, una vez adviene final y firme, **tiene efecto de cosa juzgada en relación con los bienes de naturaleza ganancial que fueron objeto de consideración judicial** como parte del proceso de disolución matrimonial. No obstante, **no tiene tal efecto sobre los bienes privativos** de los respectivos ex cónyuges **<u>ni sobre los bienes gananciales que no fueron objeto de consideración judicial durante dicho proceso</u>**.

Del expediente ante nos surge que las partes informaron al tribunal durante el proceso de divorcio, mediante estipulación a esos efectos, que durante el matrimonio adquirieron una "**casa** localizada en el barrio Santa María de Ceiba, P.R. [sic] que consta de cemento y bloques, de dos pisos" (Énfasis nuestro). A tenor con dicha afirmación estipulada, el tribunal ordenó en su sentencia la liquidación y venta de **la casa.** La sentencia no hace mención alguna del solar en controversia. Irrespectivo de si es un bien privativo o un bien ganancial[22], el solar no fue objeto de consideración ni adjudicación judicial. Bajo tales circunstancias, la referida sentencia de divorcio no tiene autoridad de cosa juzgada sobre dicho solar. El Tribunal de Primera Instancia y el Tribunal de Apelaciones

---

[22] Lo cual resolveremos al abordar el quinto señalamiento de error.

limitaron su intervención a interpretar la extensión y aplicación al caso de marras de las estipulaciones transaccionales de las partes, según adoptadas por la sentencia de divorcio. La doctrina de cosa juzgada no impide tal proceder. No se cometió el primer error señalado.

B

Por otro lado, mediante su cuarto señalamiento de error,[23] la señora Rivera Rodríguez arguye que el Tribunal de Apelaciones incidió al no determinar que el señor Rivera Reyes renunció a sus derechos sobre el mencionado solar, por no haber estipulado o requerido que se incluyera en la sentencia de divorcio la existencia de tales derechos.[24] Dicho error tampoco fue cometido. Veamos.

El artículo 1709 del Código Civil[25] define al contrato de transacción como aquel por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado. Por su naturaleza, el contrato de transacción debe interpretarse de manera restrictiva, estando rigurosamente limitada tal interpretación a los objetos

---

[23] Para facilitar la disposición del presente recurso, discutimos los señalamientos de error en el orden siguiente: primer error, cuarto error, quinto error y, finalmente, por estar íntimamente relacionados entre sí, el segundo y tercer error conjuntamente.

[24] La peticionaria se refiere al derecho de crédito que confiere la doctrina de accesión a la inversa. En la discusión del próximo señalamiento de error, abordaremos esta figura jurídica y el referido derecho de crédito.

*expresamente* determinados en ella, o que, por una inducción *necesaria* de sus palabras deban reputarse comprendidos en la misma.[26] La renuncia general de derechos se extiende sólo a los que tienen relación con la disputa sobre la cual ha recaído la transacción.[27] La razón para ello es que las transacciones se otorgan, por lo general, por razones complejas, matizadas por entregas u obligaciones recíprocas de los contratantes, con mutuos sacrificios de régimen excepcional en algunos aspectos y, por tanto, no deben interpretarse con extensión, sino restrictivamente.[28]

En vista de que las estipulaciones a que llegaron las partes durante el procedimiento de divorcio constituyeron un contrato de transacción judicial, estamos obligados a interpretar su alcance y extensión de forma restrictiva. Con ello presente, vemos que tanto las estipulaciones como la sentencia de divorcio que las adoptó, versan expresamente sobre **"la casa"** del extinto matrimonio. No hacen mención alguna del solar donde enclava. Ambas partes guardaron silencio en relación con el solar en aquel momento. El silencio específico del señor Rivera Reyes, de ninguna manera puede ser interpretado como una renuncia tácita a sus

---

[25] 31 L.P.R.A. sec. 4821.

[26] Artículo 1714 del Código Civil, 31 L.P.R.A. sec. 4826; Negrón Rivera y Bonilla, *Ex parte*, *supra*, pág. 76.

[27] Artículo 1714 del Código Civil, *supra*.

[28] Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1953, T. XXVIII, pág. 355.

derechos sobre el mismo. El hecho de no haber estipulado la existencia de tales derechos, no le priva de ellos.

C

Mediante su quinto señalamiento de error, la señora Rivera Rodríguez arguye que el Tribunal de Apelaciones erró al no aplicar al presente caso la doctrina de accesión a la inversa. Le asiste la razón. Veamos.

El Artículo 1304 del Código Civil dispone:

Las expensas útiles, hechas en los bienes peculiares de cualquiera de los cónyuges mediante anticipaciones de la sociedad o por la industria del marido o de la mujer, son gananciales.

**Lo serán también los edificios construidos durante el matrimonio en suelo propio de uno de los cónyuges, abonándose el valor del suelo al cónyuge a quien pertenezca** (Énfasis nuestro).[29]

El segundo párrafo del transcrito artículo consagra la figura jurídica de la accesión a la inversa, que es una excepción al principio general de la accesión de *superficies solo cedit* que establece el artículo 294 del Código Civil.[30] Dicho principio general establece que las edificaciones son accesorias al suelo. No obstante, cuando se construyen edificaciones a costa del caudal de la sociedad legal de gananciales en suelo de la exclusiva propiedad de uno de los cónyuges, dicho principio general cede ante la excepción que enmarca la aplicación de la referida figura jurídica. Así, una vez ocurre la accesión a la inversa, el suelo pasa a

---

[29] 31 L.P.R.A. sec. 364.

tener la condición de ganancial, reconociéndose al momento de la liquidación de dicha sociedad un crédito por el importe del valor del suelo al cónyuge que lo aportó a la misma. Ello implica que, bajo el escenario de la excepción, el suelo es accesorio a la edificación. El instante que se toma como base para valorizar el crédito del cónyuge dueño del suelo donde se construye con fondos gananciales es el de la terminación de la edificación.[31]

No está en controversia que el señor Rivera Reyes adquirió a título de compraventa el solar en cuestión antes de contraer matrimonio con la señora Rivera Rodríguez. Ello le otorgaba carácter privativo a dicho bien. Tampoco está en controversia que durante el matrimonio, la sociedad legal de gananciales por ellos compuesta construyó en el referido solar la casa que les sirvió de lecho conyugal.

Estos hechos indisputables configuraron la figura jurídica de la accesión a la inversa. Ciertamente, consumada la construcción de la casa en el solar privativo del señor Rivera Reyes, dicho solar dejó de tener tal carácter y se convirtió, de forma integral con la casa, en un bien ganancial. En ese momento, el señor Rivera Reyes adquirió un derecho de crédito por el importe del valor del solar. En su Resolución, el Tribunal de Apelaciones determinó que, luego de construida la casa, el referido

---

[30] 31 L.P.R.A. 1161; Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 221-222 (1984).
[31] Calvo Mangas v. Aragonés Jiménez, supra.

solar conservó su original naturaleza privativa.  Erró al no aplicar a los hechos la doctrina de accesión a la inversa.

D

Finalmente, mediante los señalamientos de error segundo y tercero, la señora Rivera Rodríguez arguye que el foro intermedio apelativo incidió al determinar que el término "casa", según fue utilizado en la sentencia de divorcio, no incluye al solar donde enclava, no empece a haber sido esa la intención de las partes.  Sostiene que disponer sumariamente del caso era improcedente porque, "podía haber controversia sobre la intención de las partes al contratar", refiriéndose a las estipulaciones transaccionales del divorcio.  Pasamos de inmediato a considerar ambos señalamientos conjuntamente.

La sentencia sumaria es el mecanismo procesal que confiere al juzgador discreción para dictar sentencia sin necesidad de celebrar una vista en sus méritos.  El tribunal, en el ejercicio de su discreción, puede dictarla cuando de los documentos admisibles en evidencia que se acompañan con la solicitud de sentencia sumaria, o que obran en el expediente del tribunal, surge que no existe una legítima controversia de hechos materiales y esenciales que tenga que ser dirimida en una vista evidenciaria y que sólo resta aplicar el derecho.[32]

---

[32] Regla 36 de Procedimiento Civil, 32 L.P.R.A., Ap. III, Malavé v. Oriental, 2006 T.S.P.R. 63, 2006 JTS 72, 167 D.P.R. __ (2006); García v. Darex P.R., Inc., 148 D.P.R. 364, 382

De existir controversia real en relación con hechos materiales y esenciales, no debe dictarse y cualquier duda en torno a los mismos debe resolverse en contra de la parte promovente de la moción, concediendo a la parte promovida el derecho a un juicio en su fondo.[33] En vista de ello, el mecanismo de sentencia sumaria sólo debe utilizarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que el promovido no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba.[34] Por otro lado, un tribunal, en el sano ejercicio de su discreción, debe abstenerse de resolver mediante el mecanismo de sentencia sumaria controversias en las que subyacen elementos subjetivos de intención, propósitos mentales o negligencia, y cuando el factor credibilidad sea esencial.[35]

Por otro lado, el artículo 1233 del Código Civil establece que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.[36] Hemos establecido que

---

(1999) y _Audiovisual Lang v. Sist. Est. Natal Hnos._, 144 D.P.R. 563 (1997).

[33] _Bonilla Medina v. P.N.P._, 140 D.P.R. 294 (1996); _Cuadrado Lugo v. Santiago Rodríguez_, 126 D.P.R. 272 (1990).

[34] _Malavé v. Oriental,_ _supra_; _Medina v. Merck_, 134 D.P.R. 234 (1993).

[35] _Rosario v. Nationwide Mutual_, 2003 T.S.P.R. 32, 2003 J.T.S. 34, 158 D.P.R. ___ (2003); _Santiago v. Ríos Alonso_, 2002 T.S.P.R. 15, 2002 J.T.S. 21, 156 D.P.R. ___ (2002); _Soto v. Hotel Caribe Hilton_, 137 D.P.R. 294 (1994).

[36] 31 L.P.R.A. sec. 3471.

cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse.[37] En <u>Unysys v. Ramallo Brothers Printing, Inc.</u>,[38] señalamos que el cumplimiento de lo pactado está estrechamente vinculado con la buena fe de los contratantes. Allí, en relación al principio de la obligatoriedad de los contratos, expresamos lo siguiente:

> "... [Se] considera como un principio que debe regir en toda sociedad civilizada la idea de que los hombres deben poder contar con que aquellos con quienes tratan en el intercambio social **actuarán de buena fe y por tanto llevarán a cabo las expectativas razonables que sus promesas o su conducta hayan creado razonablemente en los demás.** La obligatoriedad del contrato se funda, pues, de acuerdo con esta idea en una norma ética derivada de la buena fe, que exige no defraudar la confianza que en otro pueda haber creado nuestra promesa o nuestra conducta. En definitiva, se trata de lo que el autor citado denomina la norma ética de veracidad en nuestras comunicaciones con el prójimo, y que ordinariamente se expresa como deber de atenerse a la palabra dada. L. Díez-
>
> Picazo, Fundamentos de Derecho Civil Patrimonial, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. I, Cap. IV, pág. 99" (Énfasis nuestro).[39]

En su alegato, la señora Rivera Rodríguez arguye que como parte de las concesiones recíprocas que hicieron las

---

[37] <u>Unisys v. Ramallo Brothers</u>, 128 D.P.R. 842, 852 (1991); <u>García Curbelo v. A.F.F.</u>, 127 D.P.R. 747 (1991); <u>Casanova v. P.R. Amer. Ins. Co.</u>, 106 D.P.R. 689, 696-697 (1978).

[38] 128 D.P.R. 842, 852 (1991).
[39] Íd., pág. 852.

partes a través de las estipulaciones transaccionales del divorcio, tuvieron la intención de dividir en partes iguales el producto de la venta de la propiedad completa; es decir, de la casa y el solar.[40]  Sostiene que estando en controversia cuál fue la intención de las partes al contratar, al foro primario le estaba vedado disponer sumariamente del caso.  Señala que el Tribunal de Apelaciones erró al no revocar la resolución sumaria del Tribunal de Primera Instancia.  Diferimos de la peticionaria.

Las estipulaciones a las que llegaron las partes durante el procedimiento de divorcio fueron redactadas de forma sucinta y con un lenguaje simple y claro.  En lo pertinente, indican que durante el matrimonio las partes adquirieron **"la casa"**.  Además, expresan que la **"casa"** se pondrá a la venta y que el producto de la misma se dividirá entre ambas partes.  Nada más se expresa sobre la propiedad en controversia.

Como vemos, en las estipulaciones no se hizo referencia al solar.  Tampoco trasluce de las estipulaciones intención de clase alguna de las partes en torno al mismo.  Mucho menos revelan una intención del señor Rivera Reyes de cederle a la señora Rivera Rodríguez sus derechos sobre el solar.  De igual forma, la sentencia de divorcio no alude al solar en cuestión.  Sólo hace referencia a **"la casa"**,

---

[40] "ALEGATO PARTE DEMANDANTE-RECURRENTE" [sic], pág. 8.

adoptando *ad verbatim* las estipulaciones de las partes al respecto. En fin, ni de las referidas estipulaciones, ni de la sentencia de divorcio se desprende que el solar hubiese sido objeto de consideración, discusión o controversia entre las partes.

Por otro lado, el término **"casa"** se define como "edificio para habitar" (Énfasis nuestro).[41] Claramente, la definición excluye al suelo donde el edificio enclava. Tenemos que atribuirle buena fe tanto al señor Rivera Reyes como a la señora Rivera Rodríguez cuando utilizaron el término **"casa"** en sus estipulaciones. Obviamente, la peticionaria siempre ha conocido que el señor Rivera Reyes aportó el solar al matrimonio. Dicha aportación fue acreditada fehacientemente por el señor Rivera Reyes ante el foro primario. Ante tan elocuentes circunstancias, al interpretar las referidas estipulaciones, no vemos razones para apartarnos de su sentido literal. El término **"casa"** se refirió a la estructura de vivienda que los ex cónyuges construyeron, con exclusión del solar. Concluimos que el presente caso no presenta una controversia de intención de partes al contratar.

No habiendo controversia real de hechos materiales y esenciales, sólo restaba aplicar el derecho sustantivo vigente. La sentencia sumaria era un mecanismo adecuado para disponer del caso.

II

Por los fundamentos antes expuestos, revocamos al Tribunal de Apelaciones en todo lo que es incompatible con los pronunciamientos aquí vertidos. Devolvemos el caso al Tribunal de Primera Instancia para que señale una vista y determine mediante tasación el valor de la propiedad completa, entiéndase casa y solar. Deberá, además, determinar el valor del solar a la fecha en que terminó la construcción de la casa, cantidad que constituirá el crédito del señor Rivera Reyes. Deberá ordenar, además, la venta en pública subasta de la propiedad completa. Adjudicará al señor Rivera Reyes la cantidad correspondiente a su derecho de crédito y, la cantidad restante, producto de la venta, la adjudicará en partes iguales entre los ex cónyuges, no sin antes descontar de la partida correspondiente a la señora Rivera Rodríguez, la mitad de los cánones de renta que dispuso en su Resolución el Tribunal de Apelaciones.


                              Efraín E. Rivera Pérez
                              Juez Asociado

---

[41] Diccionario de la Lengua Española, 22da ed., Madrid, Ed. España-Calpe, 2001, T.I., pág. 468.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen Rivera Rodríguez

    Demandante Peticionario

        v.                  CC-2004-616

Esteban Rivera Reyes

    Demandado Recurrido

SENTENCIA

San Juan, Puerto Rico, a 20 de junio de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, revocamos al Tribunal de Apelaciones en todo lo que es incompatible con los pronunciamientos aquí vertidos. Devolvemos el caso al Tribunal de Primera Instancia para que señale una vista y determine mediante tasación el valor de la propiedad completa, entiéndase casa y solar. Deberá, además, determinar el valor del solar a la fecha en que terminó la construcción de la casa, cantidad que constituirá el crédito del señor Rivera Reyes. Deberá ordenar, además, la venta en pública subasta de la propiedad completa. Adjudicará al señor Rivera Reyes la cantidad correspondiente a su derecho de crédito y, la cantidad restante, producto de la venta, la adjudicará en partes iguales entre los ex cónyuges, no sin antes descontar de la partida correspondiente a la señora Rivera Rodríguez, la mitad de los cánones de renta que dispuso en su Resolución el Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton no intervino. La Jueza Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo