EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Municipio de San Juan<br><br>Recurrido<br><br>v.<br><br>Professional Research &<br>Community Services<br><br>Peticionario | Certiorari<br><br>2007 TSPR 95<br><br>171 DPR ____ |

Número del Caso: CC-2005-406

Fecha: 18 de mayo de 2007

Tribunal de Apelaciones:

      Región Judicial de San Juan

Juez Ponente:

      Hon. Heriberto Sepúlveda Santiago

Abogados de la Parte Peticionaria:

      Lcdo. Héctor Lajara Alvarez
      Lcdo. Eddie Ramírez Vale

Abogada de la Parte Recurrida:

      Lcda. Mayra E. Domenech Román

Materia: Incumplimiento de Contrato de Transacción

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de San Juan

    Recurrido

       v.                      CC-2005-406

Professional Research &
Community Services

    Peticionario

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, 18 de mayo de 2007

Nos corresponde determinar si una estipulación judicial que puso término a un pleito de cobro de patentes municipales, tuvo el efecto de convertir la deuda legal de patentes municipales en una deuda personal cuyo cumplimiento adviene exigible dentro del término prescriptivo de quince (15) años dispuesto en el artículo 1864 del Código Civil. 31 L.P.R.A. sec. 5294.

Por entender que en virtud de dicha estipulación judicial la obligación legal del contribuyente se convirtió en una obligación personal, resolvemos que se puede cobrar dicha deuda dentro del término prescriptivo de quince (15) años.

**I.**

El 27 de abril de 1992, el Municipio de San Juan ("el Municipio") le notificó a Professional Research & Community Service, Inc. ("Professional"), deficiencias en el pago de patentes municipales. La referida notificación incluyó deficiencias correspondientes a los años fiscales 1979-80; 1980-1981; 1982-1983; 1983-1984; 1984- 1985; 1985-1986; 1986-1987; 1987-1988; 1988-1989; 1989-1990; 1990-1991; y 1991-1992.[1]

A tenor con el contenido de dicha notificación de deficiencia contributiva, el 3 de agosto de 1992, el Municipio presentó una demanda en cobro de las patentes vencidas.[2] En su demanda, adujo que Professional adeudaba la suma de $42, 652. 23, incluyendo penalidades, recargos e intereses hasta el 27 de mayo de 1992, y que a pesar de haberle reclamado el pago, dicha corporación no había cumplido.[3] Posteriormente, en el mes de marzo de 1993, el Municipio presentó una demanda enmendada. En dicha demanda alegó que había emitido una segunda notificación de deficiencias y que Professional adeudaba la suma adicional de

---

[1] Apéndice del recurso de *certiorari,* págs. 134-135.

[2] En su recurso de *certiorari*, Professional aceptó que no utilizó los mecanismos provistos en la Ley de patentes municipales, Ley núm. 113 del 20 de junio de 1974, según enmendada, 21 L.P.R.A. sec. 651(o) para impugnar dicha notificación de deficiencia. Es decir, no solicitó reconsideración o vista oral para impugnar la notificación de deficiencia cursada por el Municipio. *Véase* recurso de *certiorari* pág. 9 y alegato de la parte peticionaria, pág. 18.

[3] Según la demanda el principal adeudado era de $23, 329.91.

$46,911.05 por concepto de patentes municipales vencidas hasta el 31 de enero de 1993.[4]

En el transcurso del procedimiento judicial incoado por el Municipio para cobrar las patentes municipales adeudadas, las partes suscribieron una estipulación en la que Profesional reconoció sus deudas y se comprometió a pagarlas. En una vista celebrada el 16 de marzo de 1994, el juez del Tribunal de Distrito, sala de San Juan, hizo constar que la parte demandada había aceptado la deuda y que acordaba pagar el 30% de lo adeudado en treinta (30) días y el resto en plazos mensuales por doce (12) meses. *Véase* apéndice del recurso de *certiorari*, pág. 21.

Posteriormente, las partes sometieron una "estipulación de transacción y solicitud de sentencia". En virtud de dicha estipulación, Professional se comprometió a pagar sendos por cientos de ambas deudas antes del 31 de marzo de 1994 y a pagar el balance restante de ambas deudas en once plazos consecutivos que comenzarían el 1ro de abril de 1994 y culminarían el 1ro de marzo de 1995.[5] Las partes acordaron además que de "incumplir la parte demandada con la obligación de pagar las sumas referidas en los plazos indicados, la parte demandante podr[í]a solicitar la reinstalación del… pleito y solicitar la ejecución de la sentencia…." El 24 de marzo de 1994, el foro primario dictó sentencia, acogió la estipulación suscrita por las partes y la hizo formar parte

---

[4] No obra en autos copia de dicha notificación de deficiencia que se alega se emitió el 4 de enero de 1993.
[5] El monto total de la deuda fue de $63, 754.98.

de su dictamen.  Dicha sentencia se notificó el 23 de junio de 1994.

Tras comprometerse a pagar la deuda, Professional incumplió con las estipulaciones y plazos de pago acordados. Ante dicho incumplimiento, en el mes de octubre de 1994, el Municipio presentó una moción de ejecución de sentencia en la que solicitó se expidiera una orden y mandamiento de embargo sin la prestación de fianza.  El 17 de noviembre de 1994, el foro primario dictó una orden de ejecución de sentencia y ordenó se expidiera el mandamiento de embargo.  Autorizó entonces que se embargaran bienes suficientes para cubrir la deuda de $63, 754.98.  A tenor con dicha orden, el secretario del tribunal emitió el correspondiente mandamiento de embargo el 30 de diciembre de 1994.  Sin embargo, no surge del expediente que el Municipio ejecutara dicha orden de embargo.

Nueve años más tarde, en el mes de octubre de 2003, el Municipio presentó demanda de incumplimiento de contrato de transacción.  En síntesis, alegó que Professional había incumplido con los términos de la estipulación de transacción suscrita por las partes en el año 1994.

Ante la incomparecencia de Professional, el foro primario le anotó la rebeldía el 26 de febrero de 2004.  El 15 de marzo de 2004, Professional contestó la demanda pero el tribunal de instancia se negó a levantar la anotación de rebeldía.  El 11 de mayo de 2004, Professional presentó una moción de sentencia sumaria.  En síntesis, alegó que mediante la estipulación de transacción suscrita en el 1994, se tasó

la deuda contributiva por lo que el Municipio tenía un término de 5 años para cobrar las patentes tasadas a tenor con las disposiciones de la Ley de patentes municipales. 21 L.P.R.A. sec. 651(s). Debido a que al momento de la presentación de la demanda de incumplimiento de contrato habían transcurrido más de nueve (9) años desde la tasación de la deuda contributiva, Professional solicitó que el foro primario dictara sentencia a su favor y determinara que la acción presentada por el Municipio para cobrar la deuda de patentes municipales estaba prescrita.

El 6 de julio de 2004 el tribunal de instancia declaró no ha lugar la solicitud de sentencia sumaria. Inconforme, Professional presentó una moción de reconsideración y luego una moción de desestimación de la demanda en la que alegó que el tribunal carecía de jurisdicción sobre la materia. El tribunal de instancia le concedió un término al Municipio para responder a las mociones presentadas por Professional. En su contestación, el Municipio adujo que había presentado una acción personal de cumplimiento específico de contrato de transacción. Alegó además, que dicha acción personal estaba sujeta al término prescriptivo de quince años dispuesto en el artículo 1864 del Código Civil. 31 L.P.R.A. sec. 5295. El 18 de noviembre de 2004, el tribunal de instancia declaró con lugar la contestación presentada por el Municipio.

Inconforme con la determinación del foro primario, Professional acudió ante el Tribunal de Apelaciones. En su sentencia, el foro apelativo intermedio confirmó la

determinación del tribunal de instancia. El Tribunal de Apelaciones determinó que en el año 1992 el Municipio presentó una acción judicial de cobro de patentes tasadas, dentro del término prescriptivo de cinco años dispuesto en la Ley de patentes municipales. 21 L.P.R.A. sec. 651s(c). Debido a que la ley de patentes municipales no establece un término para ejecutar una sentencia en la que se le impone al contribuyente la obligación de pagar cierta suma de dinero, dicho foro apelativo intermedio concluyó que el Municipio tenía un término prescriptivo de quince (15) años para ejecutar la sentencia.

Insatisfecho, Professional acudió ante nosotros mediante recurso de *certiorari*. En su único pero extenso señalamiento de error, indicó que incidieron los foros apelados al negarse a aplicar el término prescriptivo dispuesto en la Ley de patentes municipales para cobrar contribuciones tasadas y al permitir de esta forma que el Municipio presentara una acción independiente que sólo pretende cobrar una deuda de patentes municipales fuera del término prescriptivo aplicable.

Además, adujo que los foros apelados erraron al interpretar la estipulación de transacción del 1994 pues en ésta, las partes habían acordado que en caso de incumplimiento, el Municipio podría reactivar el pleito de cobro de la patente, hecho que excluye la posibilidad de presentar un pleito independiente de ejecución de sentencia. Finalmente, resaltó que nuestra decisión en *Igaravídez v.*

*Ricci*, 147 D.P.R. 1 (1998) impide que se ejecute una sentencia fuera de la sala sentenciadora.

El 15 de julio de 2005 expedimos el auto solicitado. Con el beneficio de los alegatos de ambas partes, procedemos a resolver.

## II.

En esencia, Professional alega que mediante la estipulación judicial de 1994, el Municipio tasó las patentes municipales adeudadas. Aduce entonces que el Municipio tenía el deber de iniciar un procedimiento para cobrar la referida deuda de patentes dentro de los cinco años siguientes a la referida tasación de las patentes adeudadas según requiere la sección 20 de la Ley de Patentes Municipales. 21 L.P.R.A. sec. 651s(c). Por entender que cualquier acción para el cobro de las patentes municipales tasadas en el año 1994 está prescrita, Professional alega que el Municipio está impedido de cobrar las referidas patentes mediante un pleito independiente de cumplimiento específico de contrato de transacción. Sostiene que en casos de cobro de deudas contributivas como el presente, no procede aplicar el término prescriptivo dispuesto en el Código Civil para las acciones personales que no tienen un término especial.

A la luz de las alegaciones de la peticionaria, procedemos a examinar el poder de los municipios de imponer y cobrar patentes municipales.

**A.**

La facultad de imponer contribuciones es un atributo esencial de la soberanía del estado y su ejercicio es una función propiamente gubernamental. McQuillin Eugene, *Municipal Corporations*, Thomson West, 3era ed., 2003, Vol. 16, sec. 44.03, pág. 17. *Véase además Burlington Air Express Inc. v. Municipio*, 154 D.P.R. 588, 597 (2001). Según el esquema contributivo municipal vigente en nuestra jurisdicción, la obligación del contribuyente de pagar patentes municipales emana de los preceptos estatutarios contenidos en la Ley de patentes municipales, Ley núm. 113 del 20 de junio de 1974, según enmendada, 21 L.P.R.A. secciones. 651(a)-652(y). En virtud de dicho mandato legislativo, los municipios tienen "poder inherente, independiente del Estado, para imponer contribuciones."[6] *HBA Contractors, Inc. v. Municipio de Ceiba*, 2005 TSPR 183, res. 6 de diciembre de 2005, 166 D.P.R. ___; *Levy, Hijo Inc. v. Municipio de Manatí,* 151 D.P.R. 292, 299 (2000).

Al examinar el poder del Estado de imponer y cobrar contribuciones, hemos expresado que "[e]l cobro de contribuciones por el Estado no es irrestricto. Dicho poder está sujeto a trámites mínimos de 'debido proceso de ley', a la exigibilidad y validez de la deuda, y a los términos

---

[6] El artículo VI, sec. 2 de la Constitución del Estado Libre Asociado de Puerto Rico dispone además que "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI. sec. 2, Const. E.L.A., L.P.R.A., Tomo 1.

prescriptivos dispuestos en los diversos estatutos." *Carazo v. Srio. de Hacienda*, *supra*; *Blás Díaz Rivera v. Srio. De Hacienda*, 2006 TSPR 85, res. 18 de mayo de 2006, 168 D.P.R. ___. Estas restricciones al poder de imponer y cobrar contribuciones pretenden evitar que los municipios ejerzan dicha facultad de forma arbitraria y le confieren al contribuyente ciertas garantías procesales dentro de los trámites de imposición y cobro de una deuda contributiva. En atención a estos principios, hemos indicado que una vez expirado el término dispuesto por ley para cobrar contribuciones adeudadas y tasadas, el Estado está impedido de cobrarlas. *Carazo v. Srio. de Hacienda*, *supra*, pág. 312.

**B.**

En síntesis, el procedimiento para cobrar una contribución se rige por tres etapas: 1) la notificación por correo certificado de una deficiencia contributiva; 2) la tasación de la contribución; y 3) el procedimiento de apremio o procedimiento judicial para exigir el pago de las contribuciones tasadas.

La notificación de una deficiencia contributiva es el trámite administrativo mediante el cual el municipio le informa al contribuyente que se determinó una contribución mayor a la que éste declaró. Genovevo Meléndez Carruccini, *Ingreso Tributable: Inclusiones y Doctrinas*, Instituto de Contribuciones de Puerto Rico, 1991, Cap. 1, sec. 1.05, pág.

35.[7] Por otra parte, "tasar un contribución es el acto[,] … después de culminadas las notificaciones y demás trámites que le siguen, de requerir del contribuyente el pago de la deficiencia o contribución". *Id.* Una vez se tasa la deuda, el municipio tiene la facultad de proceder a cobrarla mediante procedimiento de apremio **o procedimiento judicial a esos efectos.**

La Ley de patentes municipales establece un término prescriptivo para tasar la deuda y otro para cobrar la deuda contributiva después de tasada. Si el Municipio incumple con dichos términos prescriptivos, corre el riesgo de perder su derecho a cobrar una deficiencia por concepto de patentes municipales mediante los mecanismos legales disponibles. La sección 19 de la Ley de patentes municipales dispone que el municipio deberá tasar la contribución dentro de los cuatros (4) años siguientes a la presentación de la planilla o declaración contributiva. 21 L.P.R.A. sec. 651(r). Luego de que expire dicho término de cuatro (4) años, el municipio no podrá iniciar un "procedimiento en el tribunal sin tasación para el cobro de dichas patentes." *Id.* Por su parte, la sección 20(c) de la Ley de patentes municipales dispone que **el municipio tendrá cinco (5) años contados a partir de la tasación de la patente para cobrarla mediante procedimiento**

---

[7] Es importante señalar que los procedimientos administrativos y judiciales para tasar y cobrar una deuda por concepto de patentes municipales son sustancialmente similares a los establecidos en nuestra la Ley de contribución sobre ingresos (Código de Rentas Internas). *Véase* apéndice del Proyecto de la Cámara 1088, Ley Núm. 113 de 20 de junio de 1974.

**de apremio o mediante procedimiento en el tribunal a esos efectos.**[8] 21 L.P.R.A. sec. 651(s). (énfasis suplido).

Antes de tasar una deficiencia contributiva y proceder a iniciar un procedimiento de cobro por la vía de apremio o mediante procedimiento judicial, el municipio debe remitirle al contribuyente una notificación de deficiencia. Sección 16(a)(1) de la Ley de patentes municipales, 21 L.P.R.A. sec. 651(o)(a)(1). El propósito de dicha notificación es proveerle al contribuyente la oportunidad de solicitar una reconsideración de la determinación administrativa de deficiencia. *Id.*

A partir de la fecha del depósito en el correo de la notificación de deficiencia, la Ley de patentes municipales le concede al contribuyente un término de treinta (30) días para presentar una solicitud de reconsideración de la notificación de deficiencia y solicitar que se celebre una vista administrativa.[9] *Id.* Si el contribuyente opta por no presentar una solicitud de reconsideración de la notificación de deficiencia, o si en reconsideración el municipio confirma el monto de ésta, el Director de Finanzas del municipio tiene entonces el deber de emitir una notificación final de

---

[8] Antes de que expire el período de cinco (5) años, el Director de Finanzas del municipio puede prorrogar dicho período mediante acuerdo escrito con el contribuyente. "El período así acorado podrá prorrogarse por acuerdos escritos sucesivos hechos antes de la expiración del período previamente acordado." 21 L.P.R.A. sec. 651(s)(c).
[9] El Director de Finanzas del municipio también tiene la facultad de concederle una prórroga al contribuyente para solicitar una reconsideración o que se celebre una vista oral. 21 L.P.R.A sec. 551(o)(a)(1).

deficiencia.[10] *Id.* A partir de dicha notificación, el contribuyente tendrá un término de caducidad de treinta (30) días para presentar una demanda de impugnación de deficiencia.[11] *Id. Véase además Harland Co. v. Mun. de San Juan*, 139 D.P.R. 185, 189 (1995).

Por otro lado, el municipio está impedido de tasar la patente o iniciar un procedimiento para su cobro antes de enviar la notificación final de deficiencia y antes de que expire el término de treinta (30) días que tiene el contribuyente para presentar una demanda de impugnación de deficiencia. 21 L.P.R.A. sec. 651(o)(a)(10). Además, quedan interrumpidos los términos prescriptivos para la tasación y el procedimiento de cobro de la patente respectivamente, durante el tiempo en que el contribuyente puede presentar una demanda de impugnación (o hasta que la decisión del Tribunal de Instancia advenga final y firme si se presenta demanda de impugnación de deficiencia), y por los sesenta (60) días siguientes. 21 L.P.R.A. sec. 651(t).

Finalmente, cuando no se presenta una demanda de impugnación de deficiencia, la Ley de patentes municipales dispone que **"la deficiencia será tasada y deberá pagarse**

---

[10] En dicha notificación, el Director de Finanzas debe indicar el monto total de la fianza que el contribuyente deberá prestar para presentar una demanda de impugnación de deficiencia ante el Tribunal de Primera Instancia. 21 L.P.R.A. sec. 651(o)(a)(2).

[11] *Véase John Harland Co. v. Municipio de San Juan*, 139 D.P.R. 185. En dicha ocasión resolvimos que el término de treinta (30) días para impugnar en los tribunales las notificaciones finales de deficiencias es un término de caducidad.

*mediante notificación y requerimiento del Director de Finanzas.*" *21 L.P.R.A.* sec. 651(o)(c). (énfasis suplido).

### III.

Como indicamos en la exposición fáctica que antecede, en el presente caso, el Municipio de San Juan emitió una notificación de deficiencia contributiva a nombre de Professional. No está en controversia que Professional optó por no pedir reconsideración de dicha determinación. Tampoco presentó una demanda para impugnar dicha deficiencia. Ante esta situación, el Municipio procedió a presentar una demanda de cobro de patentes municipales. En dicho procedimiento, el tribunal de instancia dictó sentencia y acogió una estipulación suscrita por las partes en la que Profesional aceptó la deuda y se comprometió a pagarla en determinados plazos.

Ante estos hechos, Professional aduce que la demanda presentada por el Municipio de San Juan en el 1992 tuvo el efecto de tasar las patentes adeudadas, no de cobrar patentes tasadas. Por tanto, aduce que el Municipio tenía que cobrar dichas patentes dentro de los cinco años posteriores a dicha tasación. No nos persuade.

Un examen de las disposiciones de la Ley de patentes municipales sobre el procedimiento para tasar y cobrar dichas contribuciones, nos obliga a concluir que el Municipio de San Juan inició un procedimiento ordinario de cobro de patentes tasadas. Luego de notificar a Professional su determinación de deficiencia contributiva, ésta optó por no presentar una

demanda de impugnación de deficiencia. Ante dicha inacción, la sección 16 de la Ley de patentes municipales, *21 L.P.R.A. sec. 651(o)(c)*, le permitía al Municipio tasar y cobrar la deuda por concepto de patentes municipales.

A la luz de lo anterior, resolvemos que una vez Professional optó por no pedir reconsideración de la deficiencia y permitió que caducara su derecho de presentar una demanda de impugnación de deficiencia, el Municipio de San Juan podía proceder a tasar la deficiencia y cobrarla mediante un procedimiento judicial ordinario. Entendemos, por tanto, que el Municipio presentó una acción judicial en cobro de patentes municipales, dentro de los cinco años posteriores a la tasación de las patentes municipales.[12]

---

[12] Por otro lado, Professional alegó ante nosotros que en el año 1992, el Municipio estaba impedido de notificar las deficiencias contributivas correspondientes a los años fiscales 1979-80; 1980-1981; 1982-1983; 1983-1984; 1984-1985; 1985-1986; 1986-1987. Indica que la Ley de patentes municipales prohíbe que un municipio inicie un procedimiento de cobro de deficiencias luego de transcurridos cuatro años, contados a partir de la fecha en que el contribuyente presentó su declaración contributiva. 21 L.P.R.A. sec. 651(r). A pesar de que de un examen de la notificación de deficiencia contributiva surge que en el año 1992, el Municipio notificó ciertas deficiencias fuera del término de cuatro (4) contados a partir de la presentación de la declaración contributiva, entendemos que en virtud de la doctrina de cosa juzgada, Professional está impedido de levantar planteamiento alguno sobre la prescripción de las patentes. Le competía a Professional levantar esos planteamientos en el procedimiento administrativo de impugnación de deficiencias contributivas y, en el procedimiento judicial de cobro de las patentes municipales presentado por el Municipio en el 1992. Sin embargo, en dicho procedimiento judicial, Professional se comprometió a pagar la suma reclamada por el Municipio. De esta forma, está impedido ahora de levantar cualquier asunto sobre la prescripción o ilegalidad de dichas deficiencias contributivas. *Véase* sobre la aplicación de la doctrina de cosa juzgada en controversias de índole contributiva, *Daubón*

**IV.**

Atendido el asunto sobre la naturaleza del pleito iniciado por el Municipio de San Juan en el 1992, nos resta examinar si el Municipio estaba obligado a ejecutar dicha sentencia y cobrar la suma estipulada por las partes, dentro del término prescriptivo de cinco años dispuesto en la Ley de patentes municipales. 21 L.P.R.A. sec. 651(s).

**A.**

Como indicamos, la Ley de patentes municipales dispone que luego de tasar un patente, el municipio podrá cobrarla mediante procedimiento judicial a esos efectos. 21 L.P.R.A. sec. 651(s). Empero, dicha ley guarda silencio sobre los contornos de dicho procedimiento judicial, y sobre el modo de ejecutar la sentencia que el tribunal dicte en dicho procedimiento judicial de cobro de patentes.

El artículo 12 de nuestro Código Civil dispone que "en las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones de este título." 31 L.P.R.A. sec. 12. Acorde con dicho principio de interpretación estatutaria, en diversas ocasiones hemos expresado que una ley de carácter especial prevalece sobre un estatuto de carácter general. *Córdova & Simonpietri*, 112 D.P.R. 797, 800 (1982); *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 94 (1981); *Berrocales v.*

_____

*Belaval; v. Srio. de Hacienda*, 106 D.P.R. 400, 407 (1977); *Capó Sánchez v. Srio. de Hacienda*, 92 D.P.R. 837 (1965); *Capó Sánchez v. Srio. de Hacienda*, 90 D.P.R. 149, 155 (1964); *Tesorero v. Tribunal de Contribuciones*, 72 D.P.R. 617, 622-23 (1951).

*Tribunal* Superior, 102 D.P.R. 224, 226 (1974); Rosario *v. Atl. Southern Ins. Co.,* 95 D.P.R. 759, 764-65 (1968). Del mismo modo, en materia de derecho contributivo hemos indicado que debe acudirse en primer término a las leyes y los principios fundamentales que rigen dicha materia. *Sucn. Evans v. Secretario de Hacienda*, 108 D.P.R. 713, 718 (1979); *Ortiz Geraldino v. Secretario de Hacienda*, 118 D.P.R. 571, 574 (1987); *Albanese D'Imperio v. Secretario de Hacienda de P.R.,* 76 D.P.R. 324, 329 (1954); *Wood v. Tribunal de Contribuciones,* 71 D.P.R. 233, 235 (1950).

Sin embargo, cuando una ley especial no contiene normas aplicables a una situación en particular, se debe acudir al Código Civil para suplir las deficiencias de dicho estatuto. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Publicaciones J.T.S., cap. 69, pág. 441 (1987); *Montañez v. U.P.R.*, 156 D.P.R. 395, 421 (2002) *Rosario v. Atl. Southern Ins. Co., supra*; *Wood v. Tribunal de Contribuciones, supra*; *Dalmau v. Hernández Saldaña*, 103 D.P.R. 487 (1975). Por tanto, en ausencia de conflicto entre una ley especial y una general, debemos recurrir a la segunda para suplir las lagunas de la primera. *Córdova & Simonpietri, supra, Housing Investment Corp. v. Luna Quezada*, 112 D.P.R. 173 177 (1982); *Pueblo Ex Rel. López v. Pérez Peña*, 54 D.P.R. 804, 812 (1939).

En el presente caso, Professional sostiene que la presente controversia se rige exclusivamente por la Ley de

patentes municipales.   Arguye que el Municipio tenía un término de cinco años, contados a partir de la fecha en que se dictó la sentencia en el año 1994, para ejecutarla y cobrar las patentes municipales.   No tiene razón.

Ante el silencio de la Ley de patentes municipales sobre el procedimiento judicial que todo municipio debe seguir para cobrar una deuda de patentes municipales tasadas, y ejecutar una sentencia que se obtiene mediante estipulación en un pleito de cobro de patentes municipales, la pauta de interpretación estatutaria dispuesta en el artículo 12 del Código Civil nos obliga a suplir la referida deficiencia de la Ley de patentes municipales.   Por tanto, debemos recurrir a las disposiciones de nuestro Código Civil, 31 L.P.R.A. secs. 1-5305, y a nuestras Reglas de Procedimiento Civil, 32 L.P.R.A. Ap III, en materia de ejecución de sentencia, para examinar si el Municipio está impedido de presentar una acción para ejecutar la sentencia dictada en el año 1994.

**B.**

En primer lugar, debemos clarificar que el término estipulación no es sinónimo de transacción.   Por tanto, una estipulación no implica necesariamente la existencia de un contrato de transacción.   *P.R. Glass Corp. v. Tribunal Superior,* 103 D.P.R. 223, 231 (1975).   Sólo cuando una estipulación cumpla con los elementos esenciales de un contrato de transacción, podremos considerarla como tal.

Existen tres clases de estipulaciones:   1) las que constituyen meras admisiones de hechos; 2) las que reconocen

derechos y tienen el alcance de una adjudicación sobre tales derechos; y 3) las que proponen cierto curso de acción como, por ejemplo, que se someta una controversia a un comisionado especial o que se admita cierta prueba en un juicio. *Id*. pág. 230.

Al examinar la naturaleza de las estipulaciones hemos expresado que "[l]a estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella". *Id*. pág. 231; *Pueblo. v. Suárez Alers*, 2006 TSPR 83, res. 11 de mayo de 2006, 167 D.p.R.__; Díaz *Ayala et al. V. E.L.A.*, 153 D.P.R. 675, 691 (2001). Éstas, "persigue[n] evitar dilaciones, inconvenientes y gastos y su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica". *Id*. pág. 230. Como norma general, un juez debe aceptar los convenios y estipulaciones que las partes presenten. *Rodríguez Rosado v. Zayas* Martínez, 133 D.P.R. 406, 410 (1993). Una vez el tribunal aprueba una estipulación mediante la cual se pone término a un pleito o se resuelve un incidente dentro del mismo, ésta obliga a las partes y tiene el efecto de cosa juzgada. *Id*.

Por otro lado, el contrato de transacción es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio." *López Tristani v. Maldonado Carrero*, 2006 TSPR 143, res. 8 de septiembre de 2006, 168 D.P.R.__. (citas omitidas); Artículo 1709, Código

Civil de Puerto Rico, 31 L.P.R.A. sec. 4821; *Véase además Rivera Rodríguez v. Rivera Reyes*, 2006 TSPR 103, res. 20 de junio de 2006, 168 D.P.R. ___; *Igaravidez v. Ricci*, *supra*, pág. 5.

Los elementos constitutivos de un contrato de transacción son: 1) una relación jurídica incierta litigiosa; 2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable; y 3) las recíprocas concesiones de las partes. Artículo 1709, Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4821. *López Tristani v. Maldonado Carrero*, *supra*; *Neca Mortg. Coorp. V. A & W. Dev. S.E.*, 137 D.P.R. 860, 870 (1995); S. Tamayo Haya, *El contrato de transacción*, Thomson Civitas, Madrid, España pág. 75 (2003). En términos generales, toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante **mutuas concesiones**. *Citibank v. Dependable* Ins. *Co., Inc.*, 121 D.P.R. 503, 512 (1988); *Suc. Román v. Shelga Corp.,* 111 D.P.R. 782, 791 (1981).

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa. Artículo 1213 del Código Civil, 31 L.P.R.A. sec. 3391. Sobre la causa de un contrato de transacción hemos expresado que "[e]n conjunto, el litigio y las recíprocas prestaciones constituyen los elementos de la causa". *López Tristani v. Maldonado Carrero*, *supra (citando a* E. López de Barba, *El contrato de*

*transacción, su resolución por incumplimiento*, Murcia,

España, Ediciones Laborum, 2001, pág. 78).

En armonía con lo anterior, en todo contrato de

transacción, "[e]s necesario que cada uno de los contratantes

reduzca y sacrifique a favor de otro una parte de sus

exigencias a cambio de recibir una parte de aquello objeto

del litigio …." Tamayo Haya, *op. cit.*, pág. 141. *Véase*

*además,* E. López de Barba, *op cit.,* pág. 89. Sobre la

importancia de las recíprocas concesiones en el contrato de

transacción, hemos indicado que éstas "constituyen no tan

sólo el medio esencial para el desarrollo de la causa del

negocio transaccional, sino que éstas pasan a formar parte de

la causa". *López Tristani v. Maldonado Carrero*, *supra.*

En términos análogos, nos indica Santos Briz que la

"reciprocidad en las prestaciones es la base indispensable de

este contrato …." J. Santos Briz y otros, *Tratado de Derecho*

*Civil*, 1ra ed., Barcelona, Editorial Bosch, S.A., 2003, Tomo

IV, pág.583.[13] Por tanto, es necesario que las partes en

este tipo de contrato "sacrifiquen y concedan al mismo tiempo

---

[13] Del mismo modo, Castán Tobeñas indica sobre las recíprocas prestaciones que "una transacción sin concesiones recíprocas no puede existir, aun cuando nada obliga a que las concesiones recíprocas sean perfectamente equivalentes". J. Castán Tobeñas, *Derecho Civil Español Común y Foral*, 14ta ed., Madrid, Editorial Reus S.A., 1993, Tomo IV, pág. 823. (cita omitida). Por su parte, Puig Brutau indica: "[l]o que en definitiva caracteriza a la transacción es la eliminación de las discrepancias entre las partes mediante concesiones recíprocas. En otro caso, no existiría una transacción sino una mera renuncia. Pero la reciprocidad en las concesiones no significa que deba existir equivalencia entre ellas." J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Editorial Bosch S.A., 1982, Tomo II, volumen II, pág. 629.

alguna cosa en función de la superación del litigio sobre la cosa controvertida". Tamayo Haya, *op. cit.*, pág. 210; *López Tristani v. Maldonado Carrero*, *supra.* Es por ello que "[l]a consecuencia inmediata será que a falta de recíprocas concesiones no estaremos ante una transacción por falta de causa…."[14] Tamayo Haya, *op. cit.*, pág. 144.

Sin embargo, no es necesario que las recíprocas prestaciones sean equivalentes o "respondan a valores objetivamente equiparables". Puig Brutau, *op cit.*, Tomo II, Vol. II, pág. 629. *Véase además López Tristani v. Maldonado Carrero*, *supra.* Ello así, puesto que los sacrificios o las concesiones recíprocas pueden ser de orden económico o moral.[15] Santos Briz, *op cit.*, pág. 583; Tamayo Haya *op cit.*, pág 147; López de Barba, *op cit.*, pág. 323. En este respecto, es menester aclarar que es posible constatar la existencia de un contrato de transacción en el que no medien recíprocas prestaciones, más no podrán configurarse los elementos esenciales de dicho acuerdo si no median recíprocas concesiones. E. López de Barba, *op cit.*, pág. 321; Tamayo Haya, *op cit.*, pág. 148.

En resumen, al emprender la tarea de determinar si una estipulación cumple con los elementos de un contrato de

---

[14] De igual modo, "[n]o es posible, pues, la exclusiva satisfacción del interés de una de las partes de tal forma que si la otra parte no dio nada, la concesión de la otra ha de considerarse como una verdadera renuncia." Tamayo Haya, *op cit.*, pág. 144.

[15] En este aspecto la profesora Tamayo Haya indica que "puede existir una transacción sin paridad de concesiones ni contenido económico, bastando, por el contrario, meros sacrificios de orden moral. Tamayo Haya, *op cit.*, pág. 147.

transacción, es esencial examinar si las partes pusieron término a un litigio mediante recíprocas concesiones. "Estas concesiones… pueden ser de la más diversa índole; lo fundamental es que sean mutuas." L. R. Rivera Rivera, *El contrato de transacción, sus efectos en situaciones de solidaridad*, San Juan, Puerto Rico, Jurídica Editores, 1998, pág. 55. En ausencia de recíprocas concesiones, no existirá un contrato de transacción. En tal caso, estaríamos ante la figura de una estipulación.

No empece los rasgos que distinguen una estipulación de un contrato de transacción, en reiteradas ocasiones hemos equiparado una estipulación a una transacción. En este aspecto, indicamos en *Sucn. Román v. Shelga* Corp, 111 D.P.R. 782, 786-87 (1981) que una estipulación es, en esencia, un contrato de transacción. Sin embargo, como ya discutimos, para poder concluir que una estipulación constituye un contrato de transacción, es necesario examinar si la referida estipulación contiene los elementos esenciales de dicho contrato. A estos efectos, en *Amer. Col. Broad Corp. v. Tribunal Superior*, 94 D.P.R. 283 (1967) y en *P.R. Glass Corp. v. Tribunal Superior, supra*, esbozamos las diferencias entre una estipulación que pone fin a un pleito y un contrato de transacción judicial.

En *Amer. Col. Broad Corp. v. Tribunal Superior, supra*, estuvo en controversia una estipulación mediante la cual las partes en un pleito de salarios acordaron la suma de dinero que el patrono querellado debía a los querellantes. Luego de

examinar los términos de dicha estipulación, resolvimos que a pesar de que la referida estipulación no incluyó una "expresión consensual de las partes sobre los hechos alrededor de los cuales gira[ba] la querella", la diferencia tan marcada entre la cuantía reclamada en la querella y la finalmente acordada en la estipulación, demostraba que habían mediado **concesiones mutuas** para poner término al pleito. En atención a las recíprocas concesiones entre las partes, resolvimos que la estipulación en controversia había cumplido con los requisitos de un contrato de transacción.

Por el contrario, en *P.R. Glass Corp. v. Tribunl Superior, supra,* resolvimos que no se configuraron los elementos de un contrato de transacción en una estipulación mediante la cual los querellantes **desistieron** de una reclamación de salarios. En ausencia de concesiones recíprocas entre las partes, entendimos que no se podía interpretar que dicha moción de desistimiento era un contrato de transacción. Indicamos en dicha ocasión que los querellantes "[n]o obtuvieron nada a cambio de su desistimiento, … [y] su decisión constituyó un acto unilateral de voluntad." *P.R. Glass Corp. v. Tribunal Superior, supra, p*ág. 233. Sin embargo, aclaramos que la moción de desistimiento fue una estipulación que una vez hecha y aprobada por el tribunal, obligaba a las partes. *Id.* pág. 231.

En el presente caso, las partes sometieron a la consideración del tribunal un escrito intitulado

"estipulación de transacción y solicitud de sentencia".  Sin embargo, un examen de los términos allí acordados demuestra que dicha estipulación no puede ser considerada como un contrato de transacción.

Como indicamos, mediante dicha estipulación, Professional aceptó la deuda de patentes municipales y se comprometió a pagar la suma reclamada en plazos mensuales por un período total de un año.  Como vemos, no se deduce de dicha estipulación que el Municipio de San Juan hiciera concesión alguna, o sacrificara sus pretensiones como acreedor.  Por el contrario, el Municipio obtuvo lo que pretendía:  una sentencia que condenó a Professional a pagar la suma reclamada en la demanda.  Professional, por su parte, obtuvo la ventaja de pagar la suma reclamada por el Municipio en plazos que vencerían en un período de un año.[16]

En fin, no surge de dicha estipulación que el Municipio de San Juan le concediera un descuento a Professional en su deuda con el fin de culminar el litigio.  Tampoco surge que el Municipio sacrificara sus pretensiones a cambio de la estipulación.  Por tanto, forzoso es concluir que, en el caso de autos, las partes le pusieron término a un pleito de cobro

---

[16] En este aspecto, el Tribunal Supremo español ha determinado que no se configuran los elementos de un contrato de transacción cuando se le concede al deudor la comodidad de pagar su deuda en plazos.  STS 28 de noviembre de 1905, Cuadernos de Jurisprudencia Civil, Tomo XX, pág. 716. Específicamente, en dicha sentencia, el Tribunal Supremo español determinó que no hubo una transacción cuando el acreedor ejecutante suspendió la ejecución en un procedimiento de subastas, a cambio de la promesa del deudor de pagar la deuda en cierto plazo.  Tamayo Haya, *op cit.*, pág. 138, nota 71.

de dinero en virtud de un acuerdo bilateral en el cual Professional se comprometió a pagar la suma reclamada. En ausencia de sacrificios, o renuncias recíprocas, concluimos que la estipulación en controversia no cumplió con los elementos esenciales de un contrato de transacción.

Sin embargo, dicha estipulación válida que se hizo formar parte de una sentencia, obliga a las partes y constituye cosa juzgada.

## V.

Conscientes de que en el caso de marras las partes culminaron un pleito de cobro de dinero mediante una estipulación judicial, debemos determinar qué efecto tuvo dicha sentencia en la obligación de Professional de pagar la suma adeudada en concepto de patentes municipales. En específico, debemos examinar si la obligación que surgió al amparo de dicha sentencia por estipulación tuvo el efecto de *novar* la obligación primitiva que nació al amparo de la Ley de patentes municipales.

## A.

Tradicionalmente, la novación consiste en "la sustitución de una relación obligatoria por otra, destinada a extinguir aquélla." F. Puig Peña, *Compendio de Derecho Civil español*, 3era ed., Madrid, 1976, Tomo III, Cap. LXXVI, pág. 316. Es un "acto jurídico de doble función que, a la vez que *extingue*, *hace nacer* en lugar de ella otra obligación nueva." J. Castán Tobeñas, *Derecho Civil Español Común y Foral*, 11era ed. Madrid, Reus S.A., 1988, Tomo III, pág. 429.

En nuestro ordenamiento, la novación puede tener carácter modificativo o extintivo. *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64 (1983). Para que la novación surta efectos extintivos, es necesario que así se declare terminantemente, o que ambas obligaciones sean "de todo punto incompatibles." Artículo 1158, Código Civil, 31 L.P.R.A. sec. 3242.

La delimitación entre la novación extintiva y la modificativa es materia ampliamente discutida en la doctrina española. En esta tarea, nos indica Santos Briz que "[e]l deslinde entre la novación modificativa y la extintiva debe realizarse tomando en consideración la voluntad de las partes y la significación económica de la modificación…." J. Santos Briz y otros, *Tratado de Derecho Civil*, 1ra ed., Barcelona, Editorial Bosch, S.A., 2003, Tomo III, pág. 149. Ausente la voluntad de extinguir una obligación por otra, "se habrá creado una nueva obligación pero no se habrá extinguido la primitiva…." D. Espín Cánovas, *Manual de Derecho Civil Español*, 6ª ed., Madrid, Editorial de Revista de Derecho Privado, Vol. III, Cap. II, pág. 153. Por nuestra parte, al examinar la figura de la novación, hemos enfatizado la importancia del *animus novandi* o la voluntad de las partes al momento de alterar una obligación. *González Román v. Sucesión Cruz Cruz*, 2004 TSPR 199, res. 10 de diciembre de 2004, 163 D.P.R.__; *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 389 (1973).

Por otro lado, es menester puntualizar que en nuestro ordenamiento se presume la voluntad de novar cuando existe total incompatibilidad entre dos obligaciones. Artículo 1158 del Código Civil, 31 L.P.R.A. sec. 3242; Santos Briz, *op cit.*, Tomo III, pag. 150. Dicha incompatibilidad conlleva la extinción una obligación primitiva y nacimiento de otra en su lugar. Sobre esta modalidad de novación, indica Puig Brutau que "la incompatibilidad existe cuando las obligaciones pertenecen a tipos distintos, como en el caso en el que el arrendatario de un piso convenga con el arrendador que en lo sucesivo lo ocupará en otro concepto (compra de precio aplazado, derecho de habitación)." J. Puig Brutau, *Fundamentos de Derecho Civil*, 3era ed., Barcelona, Editorial Bosch S.A., 1982, Tomo I, volumen II, pág. 390. (*citando a L. Diez Picazo, Fundamentos de Derecho Civil Patrimonial*, Madrid, 1972, pág. 787).

En nuestro ordenamiento, las obligaciones se modifican modificar variando su objeto o sus condiciones principales; sustituyendo la persona del deudor; o subrogando a un tercero en los derechos del acreedor. Artículo 1157, Código Civil, 31 L.P.R.A. sec. 3241. La novación objetiva puede tener lugar cuando las partes cambian el objeto, la causa o las condiciones principales de una obligación. Sobre la novación por mutación de causa expone el comentarista José R. Vélez Torres que ésta ocurre "cuando se altera la razón de ser de la obligación original…." J. R. Vélez Torres, *Derecho de Obligaciones*, 2da ed. San Juan, Puerto Rico, 1997, Cap. 3,

pág. 28. *Véase además,* Diego Espín, *op cit.,* pág. 156; Puig Brutau, *op cit.,* pág. 396.

A pesar de que nuestro Código Civil no reconoce expresamente la mutación de causa como un supuesto de novación, la doctrina española reconoce que el cambio de causa es un supuesto de novación objetiva. *Véase* STS 27 de febrero de 1965 (A. 1.233)*; Castán,* op cit., p*ág. 429;* Sancho Rebullida, *La novación de las obligaciones*, Barcelona, Ediciones Nauta, pág. 381 (1964). En este respecto, Diego Espín expone que "[t]iene lugar la alteración causal por mutación del propio negocio jurídico que da lugar a la obligación,… cuando el precio debido en virtud de una compraventa o de un arrendamiento se conviene que se adeude en concepto de préstamo." Espín, *op cit.,* pág. 156. Además, podemos decir que "[e]xiste el cambio de causa cuando la prestación debida queda sustituida por la que corresponde a otro tipo de contrato". Puig Brutau, *op cit.*, Tomo I, Vol. II, pág. 396.

Sobre la novación por mutación de causa, Manuel Albadalejo y Sancho Rebullida entienden que siempre tiene carácter extintivo puesto que no cabe hablar de modificación de la causa de una obligación.[17] M. Albadalejo, *Derecho Civil*, 7ma ed., Barcelona, Librería Bosch, 1983, Tomo II. Vol. I, págs. 323-24; Sancho Rebullida, *op cit.*, págs. 385-87. Dichos autores concuerdan en que la mutación de causa no

---

[17] Explica Albadalejo que "quien debía mil pesetas como precio de una compra y continúa con ellas en concepto de mutuo…, no sigue teniendo la misma obligación de antes." Albadalejo, *op cit.*, pág. 324.

es una novación en sentido estricto. Empero, indica Albadalejo que podemos seguir hablando de novación objetiva *extintiva* por cambio de causa. M. Albadalejo, *op cit.,* pág. 325. *Véase además* Vélez Torres *op cit.*, pág. 229("Puede decirse que en un caso… en que ha habido cambio de causa, no hay realmente un caso de modificación de la obligación original, sino extinción de la misma y nacimiento de una nueva obligación.").

Como sabemos, en el caso de autos el Municipio de San Juan inició un procedimiento judicial de cobro de patentes municipales según autoriza la Ley de patentes municipales. Dicho procedimiento culminó con una estipulación judicial en la cual Professional reconoció su deuda y se comprometió a pagarla. En virtud de dicha estipulación que se hizo formar parte de una sentencia, se concretó una mutación de causa en la obligación de Professional. En sus términos originarios, Profesional tuvo una obligación legal de pagar una deuda por concepto de patentes municipales. Una vez Professional convino con el Municipio ponerle término al procedimiento judicial de cobro de patentes, dicha obligación legal se extinguió y, en su lugar, nació una nueva y distinta obligación de carácter personal.

A la luz de lo anterior, resolvemos que en virtud de dicha estipulación y de la sentencia dictada por el tribunal de instancia, Professional adquirió una deuda personal que se liberó de los términos y limitaciones impuestos en la Ley de patentes municipales. Resolvemos además que esta nueva

obligación de pagar la suma estipulada es una obligación personal cuyo cumplimiento adviene exigible dentro del término de 15 años dispuesto en el artículo 1864 del Código Civil. 31 L.P.R.A. sec. 5294.[18]

Por tanto, el Municipio cuenta con un término de quince años para ejecutar la sentencia que le impuso a Professional la obligación de pagar la suma reclamada. Véase *Padilla v. Vidal*, 71 D.P.R. 517 (1950); J. Mª Manresa y Navarro, *Comentarios al Código Civil Español*, Madrid, Reus S.A., 1973, Tomo XII, pág.1210; STS, 22 de abril de 1915, núm. 31 (Cuadernos de Jurisprudencia Civil, Tomo 133, págs. 169-175).

En virtud de lo anterior, concluimos que no está prescrita la acción presentada por el Municipio de San Juan para ejecutar la sentencia dictada por el tribunal de instancia en el 1994.

**VI.**

Finalmente, nos resta determinar si el Municipio de San Juan puede ejecutar la sentencia en controversia mediante un

---

[18] En términos análogos, al interpretar las disposiciones del Código federal de Rentas Internas sobre tasación y cobro de contribuciones, los tribunales federales han establecido que luego de presentar oportunamente un procedimiento judicial para cobrar contribuciones previamente tasadas, la entidad gubernamental legitimada a cobrar la contribución puede ejecutar dicha sentencia según las normas de ejecución de sentencia dispuestas en el derecho del estado del que se trate. *U.S. v. Wientraub*, 613 F. 2d 612 (6th Cir. 1979); *Moyer v. Mathas*, 458 F. 2d 431 (5th Cir 1972); *Hector v. U.S.*, 255 F. 2d 84 (5th Cir. 1958). *Véase además*, *Mertens law of federal Income taxation*, sec. 57:77 (westlaw database 1997). En dichos casos se entiende que la sentencia dictada en contra del contribuyente extiende la vida de la deuda, no empece las limitaciones impuestas por el Código federal de Rentas Internas. *Id.*

pleito independiente de incumplimiento de contrato de transacción. Professional arguye que, en virtud de nuestra decisión en *Igaravidez v. Ricci*, *supra*, el Municipio está impedido de presentar un pleito independiente para cobrar la deuda que surgió por gravamen judicial.

El procedimiento de ejecución de sentencia le imprime continuidad a todo proceso judicial que culmina con una sentencia. Es necesario recurrir a la ejecución forzosa de una sentencia cuando la parte obligada incumple los términos de la sentencia. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, San Juan, Michie de Puerto Rico, 1997, Cap. 63, pág. 453.

Como norma general, las sentencias se ejecutan en la sala sentenciadora. *Igaravidez v. Ricci, supra*. Véase *además* J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Publicaciones J.T.S., Tomo. II pág. 805. Sobre el procedimiento de ejecución de sentencia, la Regla 51.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. R. 51.1, dispone que la parte a cuyo favor se dictó una sentencia puede ejecutarla dentro de los cinco años de ésta ser firme. Transcurrido dicho término, la parte debe presentar una moción de ejecución de sentencia, previa notificación a todas las partes. Regla 51.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 51.1.

Sin embargo, a modo de excepción, hemos establecido que en acciones de cobro de dinero, la parte a cuyo favor se dictó una sentencia puede presentar un pleito independiente

para ejecutarla. *Quiñones v. Jiménez* Conde, 117 D.P.R. 1, 8 (1986)("las sumas de dinero adeudadas por concepto de pensiones alimenticias ya devengadas pueden ser objeto de una acción ordinaria e independiente de cobro de dinero."); *Padilla v. Vidal*, *supra*. Hemos reconocido esta excepción porque en los casos de sentencias que le imponen a una persona el deber de satisfacer una suma de dinero, surge un nuevo crédito que se puede reclamar por vía judicial. *Rodríguez v. Martínez*, 68 D.P.R. 450, 453 (1948). J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Publicaciones J.T.S., Tomo IV, Suplemento Acumulativo 2001-2005, pág. 274.

En el presente caso, el Municipio presentó una demanda de incumplimiento de contrato de transacción. En dicha demanda solicitó el pago de la deuda impuesta a Professional por mandato judicial en el 1994 más los intereses acumulados desde esa fecha. A pesar de que no cabe hablar en este caso de la existencia de un contrato de transacción, al presentar su demanda, el Municipio solicitó el pago de la suma de dinero impuesta en la sentencia dictada en el 1994. Por tanto, resolvemos que no erró el Municipio al instar un pleito independiente con el fin de ejecutar la sentencia anterior que condenó a Professional a pagarle al Municipio de San Juan una suma de dinero. Resolvemos que el Municipio de San Juan, como acreedor por sentencia, tiene la facultad de ejecutarla mediante este pleito independiente.

En virtud de lo anterior, confirmamos la sentencia del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que se culminen los trámites de ejecución de sentencia conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.


                        Anabelle Rodríguez Rodríguez
                              Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de San Juan

    Recurrido

        v.

                                CC-2005-406

Professional Research &
Community Services

    Peticionario

SENTENCIA

San Juan, Puerto Rico, 18 de mayo de 2007

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta sentencia confirmando la sentencia del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que se culminen los trámites de ejecución de sentencia conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton hace constar lo siguiente:

"El Juez Presidente señor Hernández Denton concurre con el resultado de la Opinión del Tribunal por entender que procedía confirmar el dictamen del Tribunal de Apelaciones conforme a la doctrina pautada por este Tribunal en los casos *Padilla v. Vidal*, 71 D.P.R. 517 (1950), *Rodríguez v. Martínez*, 68 D.P.R. 450 (1948) y *Tettamanzi v. Zeno*, 24 D.P.R. 775 (1917). Aun cuando nuestro ordenamiento dispone el remedio de ejecución de sentencia, ya hemos reconocido el derecho a entablar una acción independiente en cobro

de sentencia, cuyo carácter es personal y de acuerdo con lo dispuesto en el artículo 1864 del Código Civil, prescribe a los quince (15) años, contados a partir de la fecha en que la sentencia quedó firme."

La Juez Asociada señora Fiol Matta concurre en el resultado sin opinión escrita.  El Juez Asociado señor Rivera Pérez no intervino.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo